Commonwealth *v.* Henderson, Appellant.

Argued November 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Seymour I. Toll,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Albert L. Becker, James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 25, 1974:
The appellant, Calvin Henderson, was tried before a jury and found guilty of aggravated robbery and aggravated assault and battery. Post trial motions were filed and denied, and a sentence of ten to twenty years imprisonment was imposed on the aggravated robbery conviction, and a sentence of one and one-half to three years was imposed on the aggravated assault and battery conviction, to run concurrently with the aggravated robbery sentence. An appeal was filed in the Superior Court, which affirmed without opinion. We

granted allocatur and now, after considered review of the primary question, we reverse and remand for a new trial.

The salient facts are as follows:

On August 2, 1971, at approximately 1:45 a.m., one Jasper Brown was robbed on a public street in Philadelphia. Brown testified at trial that he was accosted by appellant, who struck him with a nightstick, and took eighteen dollars from his person. Brown stated that after the robbery, he followed appellant to the residence of Mrs. Lavern Bighum, Brown's next-door neighbor, and as the two men stood on the steps of the two adjacent houses, appellant again confronted him and asked what he wanted. Brown entered his residence, called the police, and directed them to the Bighum house. The police arrested appellant, who was then in bed.

The appellant did not testify at trial, but did offer the testimony of an alibi witness.

The only issue which requires discussion evolves out of the closing argument to the jury by the district attorney. The district attorney stated:

"You know, after this arrest was made Mr. Brown told you he testified at a preliminary hearing. You know he was in Court yesterday. You know he is in Court today, and he might have been in Court before that. He has done what you would want any good citizen to do. You know, you hear about people that don't want to get involved, that just say to the police I don't want to come into Court and testify. I don't want to be a witness. Leave me alone. Don't let me get involved. When that happens that criminal goes out on the street and commits another crime, and he hits some other poor individual over the head.

"Well, Mr. Brown did what he should do in this case. He came into this courtroom and the other courtroom at the preliminary hearing and he testified and

he did what he is supposed to do, and the police officers, Munday and Krouse, they did what they are supposed to do to try and protect the public. They arrested the defendant after he was positively identified. Detective Finnerty did what he was supposed to do. I have tried to present the case as best I know how, and His Honor has done what he is supposed to do, and Mr. Filippone has done what he is supposed to do, trying to defend his client. It is going to be your turn soon to do what you are supposed to do, because the whole case now, from the time of the arrest, it all comes down to you jurors, and you have got to do your job.

"You know this defendant is a vicious man. He sits here before you and he looks quite humble and looks quite harmless as defendants often do in a courtroom, because he is sitting here and hasn't said a word and is quiet . . ."

Appellant's attorney immediately objected to the comment and moved for a mistrial, which was denied by the trial judge. Appellant now asserts the reference to his not saying a word is an improper comment on his failure to testify on his own behalf, and, therefore, is violative of his rights under the Federal Constitution as enunciated in *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229 (1965), and, alternatively, under a Pennsylvania statute which forbids such comment. See Act of May 23, 1887, P. L. 158, §10, 19 P.S. 631.[1]

Initially, turning our attention to the Pennsylvania statutory anti-comment rule, it is clear the district at-

---

[1] The statute provides: "Except defendants actually upon trial in a criminal court, any competent witness may be compelled to testify in any proceeding, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to criminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal court, to offer himself as a witness be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial."

torney's reference to the appellant's failure to say a word is a violation of the statute. The statute has been interpreted by this Court[2] to mean that a comment by a district attorney or a trial judge which indicated a duty on the part of a criminal defendant to testify, and which permits an unfavorable inference of guilt to be drawn therefrom by the jury is violative of the statute. Instantly, by characterizing the conduct of the Commonwealth's witnesses in testifying as "doing what they are supposed to do" the jury could have reasonably drawn the conclusion appellant had a duty or an obligation to take the witness stand. Moreover, the context within which the district attorney's comment was made could have led the jury to believe the only reason the appellant did not take the witness stand was because he was in fact guilty.

Next, focusing our attention on the *Griffin* decision, we are equally satisfied the complained of comment violated the federal constitutional rule therein announced. In *Griffin*, the Supreme Court considered the anti-comment rule in the context of the Self-Incrimination Clause of the Fifth Amendment to the United States Constitution. The Court recognized that allowing the prosecution to comment on the accused's failure to testify was, in effect, allowing that failure to take the witness stand to be used as evidence against him, which in the minds of the jurors would be indicative of guilt. In this regard, the Court aptly said: "If the words 'Fifth Amendment' are substituted for 'act' and for 'statute', the spirit of the Self-Incrimination

---

[2] The statute has been given a limited interpretation by this Court, at times over the dissent of this writer. See *Commonwealth v. Allen*, 445 Pa. 156, 281 A. 2d 634 (1971) [Justice ROBERTS dissenting, joined by this writer and Justice O'BRIEN]. However, because the instant comments clearly fit within that which is condemned by the statute, there is no need to discuss the full scope of the rule.

Clause is reflected. For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice', Murphy v. Waterfront Comm., 378 U.S. 52, 55, 84 S. Ct. 1594, 1596, 12 L. Ed. 678, which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. . . . What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." 380 U.S. at 613-14, 85 S. Ct. at 1232-33.

Presently, the comment by the district attorney brought to the attention of the jury the appellant's failure to testify, and this clearly could have been considered as evidence indicating guilt. Thus, the appellant could have been "penalized" for asserting his constitutional right.

Notwithstanding this finding on our part, the Commonwealth argues the statement of the district attorney was harmless error, citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967), and *Commonwealth v. Camm*, 443 Pa. 253, 277 A. 2d 325 (1971). It is asserted the jury would only view this comment as a reflection on the demeanor and conduct of the appellant in the courtroom. The Commonwealth also contends that in light of the quantity of evidence against the accused, and the instructions by the trial judge to the jury concerning the district attorney's comment, the error can only be viewed as harmless.

In the decision of *Chapman v. California*, supra, the Supreme Court of the United States in reviewing

the question of a *Griffin* violation held that before an error can be ruled harmless, the reviewing court must be convinced "beyond a reasonable doubt" the error was harmless. The Court stated: "We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S. Ct. at 828. See also *Fontaine v. California,* 390 U.S. 593, 88 S. Ct. 1229 (1968); *Anderson v. Nelson,* 390 U.S. 523, 88 S. Ct. 1133 (1968).

Instantly, although the jury could have viewed the prosecutor's comment as merely reflecting on appellant's conduct, it is more likely the statement was interpreted as an adverse comment on his failure to take the witness stand and testify in his own behalf. Moreover, viewed in the context of the entire statement, the jury could have interpreted the statement as imposing a duty on appellant to testify. Likewise, although there was a great deal of evidence presented against the accused, including the eyewitness testimony of the victim, a description of the clothing worn by the felon which substantially matched the clothing of appellant, and testimony that a nightstick similar to the one used by the assailant to strike the victim was discovered in the garbage behind the Bighum home, this evidence was rebutted to a certain extent. Mrs. Bighum was called by the appellant as an alibi witness, and she testified appellant was at her home, in bed, watching television at the time of the robbery. Considering the adverse statement in light of the alibi defense, the jury could have reasonably concluded that had the alibi been true, the appellant would have taken the witness stand to fortify the testimony of his witness. Given the fact appellant did not testify, the jury could have believed that not only was the alibi testimony untrue,

but that appellant was admitting his guilt by not testifying. Thus, it was reasonably possible that in light of the comment, the jury could have surmised appellant's failure to testify was an admission of guilt. Thus, the exercise of a constitutional right could have been damaging evidence against the appellant. Moreover, the facts of the case may have troubled the jury. As related by the victim, after the assault the appellant walked from the scene of the crime with the victim following closely behind. When appellant reached the steps of the Bighum home, he turned around and confronted the victim and asked what he wanted. Then when he entered the Bighum home, he undressed, went to bed, and apparently waited for the police to arrive. Lastly, the Commonwealth argues the judge's charge to the jury cured any harmful effect of the district attorney's comment.[3] Although, we recognize the trial judge may have done all he could under the circumstances, his corrective charge only would have vindicated the adverse effect of the summation with respect to appellant's duty to take the stand. The judge's charge did not cure the adverse inference the jury could have drawn on the issue of guilt or admission of guilt. This set of facts simply does not meet the standard set forth in *Chapman.*

---

[3] The portion of the judge's charge which focused on the district attorney's comment is as follows: "There is no duty on the part of the defendant to take the witness stand, nor is there any duty on his part to put on any evidence or put any witness on. In this case, of course, the defendant chose to put on a witness. Now, there was an objection lodged by defense counsel to the Assistant District Attorney when in his summation referring to the defendant and said, look how calmly he sits there not saying anything. He doesn't have to say anything, because you know what the law says. He doesn't have to take the stand and he doesn't have to testify. I want you to keep that in mind."

The Commonwealth asserts the instant case is controlled by *Commonwealth v. Camm*,[4] *supra*; however, it is clearly distinguishable. In *Camm* Mr. Justice POMEROY, speaking for a majority of the Court stated: "The case before us stands in sharp contrast to Anderson and Fontaine. Here the comment was not extensive, no inference of guilt from silence was stressed to the jury, and there was no evidence that could have supported acquittal. The assistant district attorney's statement was lacking the vindictive qualities of those questioned in Griffin, Anderson and Fontaine, and must be viewed in light of the fact that here the defendant was in fact a witness, even though for a limited purpose. The only ground on which Camm could have been acquitted was not evidence of his innocence, for there was none, but a finding that the confession was involuntary. The facts stated in the confession, while subject to disbelief by the jury, were not put in issue in any way, and there was damaging circumstantial evidence in the form of a witness' testimony which was corroborative of the confession." 443 Pa. at 268-69, 277 A. 2d at 333. Instantly, although the comment was not extensive, the jury could clearly have inferred a duty to testify and an adverse inference of guilt could have arisen from the emphasis placed on appellant's silence. There was also evidence to support an acquittal. The district attorney's comment also had a vindictive quality in that he branded the appellant a "vicious man."[5] Moreover, the appellant did not take the witness stand, so the impact of the comment would

---

[4] In *Camm*, this writer and Mr. Justice ROBERTS dissented.

[5] The propriety of such a statement is controlled by our recent decisions in *Commonwealth v. Toth*, 455 Pa. 154, 314 A. 2d 275 (1974), and *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971). However, because of our resolution of the principal issue, we do not reach this issue.

be clear. Lastly, the question of guilt or innocence was clearly at issue here, based on evidence presented by the Commonwealth and the appellant, and there was no confession involved.

Viewed in the context of the entire case, we cannot say the error was harmless beyond a reasonable doubt,[6] either under the federal constitutional rule, or under the Pennsylvania statute.

The order of the Superior Court and the judgment of the court of original jurisdiction are reversed, and a new trial is ordered.

Mr. Chief Justice JONES dissents.

---

[6] As the Supreme Court noted in *Chapman*: "And though the case in which this occurred presented a reasonably strong 'circumstantial web of evidence' against petitioner . . . it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions." 386 U.S. at 25-26, 87 S. Ct. 829.