365 A.2d 1237

**COMMONWEALTH of Pennsylvania**

v.

**Michael Fiedle MALONEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 16, 1975.

Decided Nov. 24, 1976.

344

---

Ronald W. Shipman, Coffin, DeRaymond, Shipman & Stitt, Joel A. Ziev, Easton, for appellant.

Robert A. Freedberg, Asst. Dist. Atty., Easton, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, and NIX, JJ.

## OPINION

EAGEN, Justice.

Kenneth Fiedle Maloney was convicted by a jury of murder of the first degree and the punishment was fixed at life imprisonment. Following the denial of post-verdict motions, sentence was imposed. This appeal followed. The sufficiency of the evidence to warrant the conviction is not challenged;[1] however, it is argued that certain errors at trial were so prejudicial, a reversal of the judgment and a retrial is required.

The prosecution stemmed from a fatal stabbing at a carnival in East Bangor, Northampton County, sponsored by a local volunteer firemen's group. The victim, Guy Weaver, a member of a motorcycle club from Bethlehem known as the "Gypsies," arrived at the carnival with four fellow club members. The appellant, Maloney, came to the carnival accompanied by several of his fellow members of the "Bangor Group." Shortly after the latter's arrival a disturbance ensued and Maloney and his companions were ordered off the grounds. This group then visited a near-by tavern but after about an hour returned to the carnival grounds where a fist fight developed between Chester Miller of the "Gypsies" and Thomas Klusko of the "Bangor Group." According to the testimony of three Commonwealth witnesses, who testified they observed the incident, Weaver was standing by watching the encounter when Maloney approached and stabbed him in the chest with a knife without any apparent provocation.

Testifying in his own defense, Maloney denied stabbing Weaver and being in possession of a knife at the carnival. His testimony was corroborated by another in-

---

1. A motion in arrest of judgment was filed but later abandoned in the trial court. An independent review of the record indicates sufficient evidence exists to sustain the conviction.

dividual who attended the carnival in Maloney's company.

Five assignments of error are presented. For present purposes, only two need to be discussed.[2] Both involve the trial conduct of the district attorney. This is the background.

At trial a state police officer, Trooper Wills, was asked whether certain items were taken from Maloney when he was arrested. After receiving an affirmative response, the district attorney asked:

"Now, then what did you do, Mr. Wills?"

Wills responded:

"He [Maloney] was taken to the state police barracks in Easton, where he was advised of his constitutional rights again, he signed a state police rights form, *and he refused to give a statement, and* . . .." [Emphasis added.]

No objection was then entered. The examination of Officer Wills continued for a short period when the district attorney returned to the subject of Maloney's silence at the time of arrest by asking this question to which he received the following answer.

"Now, you advised the defendant of his constitutional rights and you took no statement from him; is that correct?

"That's correct."

One of Maloney's counsel immediately objected and the objection was sustained. A side bar conference ensued during which Maloney's other counsel pointed out to the court that this was the second reference to Maloney's silence at the time of arrest and this counsel moved for a

---

2. The following assignments of error we will not reach: (1) the trial court erred in refusing a request to instruct the jury on voluntary manslaughter; (2) the trial court erred in denying a motion for a change of venue; (3) the trial court erred in overruling an objection to the competency of a Commonwealth witness who was permitted to testify as an expert on blood-typing.

mistrial. One of Maloney's counsel requested curative instructions. The trial judge denied a mistrial and immediately instructed the jury in the following manner:[3]

> "Ladies and gentlemen of the jury, in response to one of the questions asked, I believe the response of the witness was that Mr. Maloney made no statement. Please understand, ladies and gentlemen, that a person who is arrested, who is charged with anything, has no duty to make a statement. He is under no obligation to make a statement at all, in any way, shape or form. That answer, therefore, is not evidence. It may not be considered by you. It shall not be considered by you as being any evidence whatsoever against Mr. Maloney with respect to the case we have before us. It's a constitutional right you have, not to say anything. The fact that you exercise that right cannot be held against you. I instruct you specifically at this time concerning that in order that you might understand it and not allow it to in any way interfere with your thinking about the case."

In this appeal the district attorney concedes the two references to Maloney's silence at the time of arrest were improper and an impingement upon the accused's consti-

3. Subsequently, in his charge to the jury the trial judge further instructed the jury:

> "The mere fact that he was arrested and is accused of a crime is not any evidence against him. In this respect, you may recall that during the course of the trial I gave you special instructions concerning the fact that I think Trooper Wills testified that at the time Mr. Maloney was arrested, and after he had been advised of his constitutional rights, he said nothing. I instructed you then, and I again instruct you, ladies and gentlemen, that the fact that the defendant said nothing when he was arrested is not any evidence against him. Under our system, ladies and gentlemen, a person is presumed to be innocent. You are not required to say anything in your own defense. You don't have to respond to anything when a policeman arrests you. And I said, and I repeat, that you are not to infer anything against the defendant by virtue of the fact that he said nothing at the time he was arrested. If you do, you subvert your oaths as jurors in following such action, so again, you are to infer nothing against the defendant by virtue of the fact that he said nothing at the time he was arrested."

tutional right to remain silent.[4] But the district attorney argues the effect of the improper references was overcome and any possible prejudice removed by the court's curative instructions.

Whether instructions by the court may cure an improper prosecutorial reference to an accused's silence at the time of arrest or at trial is not too clear from prior Pennsylvania case law because our appellate court rulings do not appear to be entirely consistent. The district attorney cites *Commonwealth v. Lowery*, 440 Pa. 361, 269 A.2d 724 (1970), in support of his position that curative instructions may overcome any possible prejudice arising from such an improper reference, and hence, render the improper reference harmless error. It is true that in *Lowery*, supra, this Court did indicate in *dictum* that proper and adequate instructions may cure such error, but we affirmed the ruling of the trial court denying a mistrial solely because defense counsel stated an improper ground for his objection to the improper prosecutorial reference. However, *Commonwealth v. Ross*, 403 Pa. 358, 169 A.2d 780 (1961), is supportive of the district attorney's position. See also, *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954) and *Commonwealth v. Greco*, 227 Pa.Super. 19, 323 A.2d 132 (1974).[5]

But in *Commonwealth v. Wilcox*, 316 Pa. 129, 144, 173 A. 653, 660 (1934), this Court affirmed ". . . on

4. The district attorney could hardly argue to the contrary. See *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973); *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972); *Commonwealth v. Dulaney*, 449 Pa. 45, 295 A.2d 328 (1972). And as we pointed out in *Haideman*, supra, 449 Pa. at 370, 296 A.2d at 767, citing *Gillison v. United States*, 130 U.S. App.D.C. 215, 399 F.2d 586, 587 (1968), "The difference between prosecutorial use of an accused's silence at *trial* and the use of an accused's silence at time of *arrest* is, as one court stated, 'infinitesimal.'" [Emphasis in original.]

5. The weight of authority in state courts and in federal courts is that an improper prosecutorial reference may be cured by adequate court instruction. See 24 A.L.R.3d 1093, 1122–23, § 12(a)(b).

the learned opinion of Judge Keller . . ." of the Superior Court which opinion included this statement: "If the remark is of such a character as to violate the accused's constitutional rights, such as a reference to his failure to take the witness stand, it cannot be cured by the trial judge and a new trial must be ordered . . .." Relying on *Commonwealth v. Wilcox*, supra, the Superior Court in *Commonwealth v. Reichard*, 211 Pa.Super. 55, 233 A.2d 603 (1967), ruled that the following statement in the district attorney's summation, " 'I ask you one thing, did you hear one word of denial?' ", could not be cured by subsequent court instructions. To the same effect, see *Commonwealth v. Miller*, 205 Pa.Super. 297, 208 A.2d 867 (1965). Further, respected authorities have concluded that under Pennsylvania law prosecutorial reference to an accused's silence at trial may not be cured by court instructions. See Jenkins, Pennsylvania Evidence (1974) at § 15.4, page 285 and Feldman, Pennsylvania Trial Guide (1973) at § 12.6, page 6.

In order that there will be no confusion henceforth, we now specifically rule that in Pennsylvania adequate instructions under some circumstances may cure error of the nature here complained of. Initially, whether the harm can be removed by curative instructions will be within the sound discretion of the trial judge and his determination will be subject to appellate review. In making this decision, the following will be important considerations but not necessarily exclusive: (1) the nature of the reference, particularly, whether it was a specific comment on the accused's silence at trial or at the time of arrest or whether it was, as in *Commonwealth v. Ross*, supra, merely a reference to the fact that incriminating evidence of the Commonwealth was undenied or uncontradicted; and (2) whether the accused's silence was exploited by the district attorney.

Instantly, while the particular testimony of the witness Wills constituted a specific reference to silence at a time when Maloney had the constitutional right to remain tight-lipped and this could have caused an improper inference of guilt, this testimony was not objected to. The district attorney's follow-up question which prompted the motion for a mistrial was not an exploitation of Maloney's silence, that is, it did not ask the jury to draw an improper inference. Further, the court's instructions were timely and adequate. Under the circumstances, we conclude the trial judge did not abuse his discretion in denying a mistrial.

The next trial incident we deem it necessary to consider is the district attorney's summation. At one point the district attorney said:

"[L]adies and gentlemen, we have Pamela Lohman, who is the wife of one of Mike Maloney's gang, who was there, and testified. She didn't have an ax to grind. They can tell you about her husband being charged with some other crime at some other time. There's no question he was. *The whole bunch of them have been.*" [Emphasis added.]

Defense counsel objected to the reference to "[t]he whole bunch of them have been [charged with crime]." A discussion followed in which counsel and the trial judge agreed that Pamela Lohman's husband had been charged with a crime, but that no evidence existed to show Maloney had ever been so charged. The trial judge sustained the objection and then instructed the jury as follows:

"Ladies and gentlemen, I believe the district attorney, in his closing remarks, indicated that the group from Bangor that was concerned here had all been charged with violations of the criminal code. That's not my recollection of the testimony, ladies and gentlemen. I think Mr. Lohman indicated he had been charged, and

I think was charged at the time, with harassing a magistrate or something of the sort."

While the instruction may have been more adequately framed to point out specifically that Maloney had never been charged with a crime, defense counsel did not object to the adequacy of the instruction nor did counsel move for a mistrial. The reasoning of *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974) is here applicable. There we held the defendant could not complain on appeal of the failure of the trial judge to declare a mistrial since counsel failed to move for a mistrial. Defense counsel had objected to a testimonial reference by a witness to the accused's exercise of his privilege against self-incrimination, the objection was sustained and cautionary instructions were given.[6] This Court reasoned that although a mistrial *may* have been warranted under Pa.R.Crim.P. 1118 had defense counsel moved for it, since the remark was not one which would justify a *sua sponte* declaration of a mistrial under *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974), the accused's rights were adequately protected and the possibility of a right to a mistrial waived because it was not moved for and because the objection was sustained and the remedy given was not objected to.

Instantly, defense counsel did not move for a mistrial and the remark would not warrant a *sua sponte* declaration of a mistrial because the circumstances do not indicate a situation of "manifest necessity." In this posture, a new trial is not warranted on the basis of this section of the summation.

6. Although we noted that the instruction in *Glenn* included a direction to disregard the remark and an admonishment that the jury could not and should not draw an unfavorable inference from the reference, such factors would not appear to be determinative since the adequacy of the instruction, if inadequate, would also have to be objected to. Moreover, the adequacy of the instruction here is not challenged and the instruction did inform the jury no evidence existed to support the district attorney's remark.

352 

 In closing the district attorney further said:

". . . in homicide cases, you very seldom get an eyewitness. Here we have three eyewitnesses, and it's inconceivable to me, ladies and gentlemen, that you would have the circumstantial evidence and three eyewitnesses who saw the actual perpetration of the crime and then say it's not beyond a reasonable doubt. *It's inconceivable to me that this would happen here in our county in this courtroom. It is. If it should happen, I just don't know. I'd probably lose faith in the judicial system.*" [Emphasis added.]

Defense counsel objected to the remarks and the trial judge overruled the objection. While there was no request for a mistrial, the district attorney's remarks, in our view, were preserved for appellate review, and the district attorney does not argue otherwise. Herein, the objection was overruled, which distinguishes the situation from that presented in *Glenn,* supra. Moreover, the reasons for the objection were obvious and thus a specific ground for objection was unnecessary. And finally, since the objection was overruled, the trial judge was in effect saying the district attorney's remarks were proper. Under such circumstances, a motion for a mistrial would be an exercise in futility.

 The question follows: were the district attorney's remarks so improper and prejudicial as to deny Maloney a fair trial?

The rule in Pennsylvania is that the district attorney may not express to the jury a personal belief as to the guilt or innocence of an accused. *Commonwealth v. Talley,* 456 Pa. 574, 318 A.2d 922 (1974); *Commonwealth v. Ronello,* 251 Pa. 329, 96 A. 826 (1916); *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974). Clearly, here the district attorney expressed a personal opinion of the guilt of Maloney. As such, error was committed and

the trial judge should not have overruled defense counsel's objection.

But,

> "[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. *A new trial is required when the remark is prejudicial, that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.* . . ."

*Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), quoting from *Commonwealth v. Phillips,* 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957).

Applying the standard to the remarks instantly, we conclude a new trial is necessary. It is true, as the district attorney argues, that the remarks were made following a summation of evidence, *Commonwealth v. Talley,* supra, and this mitigates against the degree of harm. But the remarks in *Talley,* supra, can also be construed as stating a conclusion derived from the evidence rather than as the opinion of the district attorney because *Talley,* supra, did not involve a direct statement of opinion, rather the remarks were framed in the third person singular, i. e., "This man has just committed murder." Here the remarks were expressed in the first person singular, i. e., "It's inconceivable *to me* . . . ;" "*I* just don't know;" and, "*I'd* probably lose faith . . . ." Furthermore, in terms of prejudice, not only do the remarks inject the district attorney's opinion and thus improperly add his experience and judgment to the issue of guilt, they also inject, as a deterrent to a finding of innocence, the idea that an elected district attorney will lose faith in our judicial system if guilty is not the verdict.

Since the evidence in this case required a judgment by the jury as to credibility, the district attorney's opinion

as to guilt necessarily reflected his opinion as to
credibility.[7] Moreover, we cannot say, particularly in
light of the judge's instructions,[8] that the opinion ex-
pressed by the district attorney did not possibly affect
the jury's deliberations and determination of guilt. As
such, the nature and substance of the remarks indicate
sufficient prejudice to warrant the granting of a new
trial. Further, the manner of delivery, i. e., repetition of
opinion, supports this conclusion.

*United States v. Schartner*, 426 F.2d 470 (3d Cir.
1970), is apposite. Reversible error was there held to
have occurred where the district attorney remarked: "I
say to you with all the sincerity I can muster that if you
do not convict the defendant, the guilty will escape."
What the United States Court of Appeals for the Third
Circuit stated in reviewing this remark is equally appli-
cable here:

"We cannot countenance these remarks. Not only do
they imply a personal belief in . . . guilt, but
they also indirectly invite the jury to rely on the Gov-

7. As previously related, Maloney denied stabbing Weaver.

8. The trial judge charged in relevant part:
"If your recollection of the evidence, if your decision as to the
inferences established by the evidence, differs from that ex-
pressed by me or by counsel, it is your own recollection and
conclusions which are to govern. If your judgment of what
the evidence establishes differs from that suggested to you ei-
ther by me or by counsel, you should follow your own judg-
ment. *You should not infer from this that you are to ignore
what counsel said to you in their closing addresses. It is not
only your right, but it is your duty to consider their arguments,
to review the testimony in light of those arguments.*
. . ." [Emphasis added.]
Although the charge indicates the jury could reject the argu-
ments, it did not inform the jury that the district attorney's opin-
ion as to guilt and his possible loss of faith in the judicial system
were not to be considered. On the contrary, the charge placed a
duty on the jurors to consider the arguments which may well
have included in the jurors' minds the opinion of the district at-
torney.

ernment attorney's experience in prosecuting criminals generally . . .. Neither the prosecutor's general experience nor his moral integrity has anything to do with the evidence in the case."

*United States v. Schartner,* supra at 478.

█ Finally, the Commonwealth argues that the error is harmless beyond a reasonable doubt in light of overwhelming evidence of guilt, citing *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). Again, since the principal issue was credibility and since an opinion and a deterrent to crediting Maloney's testimony were injected, we cannot say beyond a reasonable doubt that these factors did not effect the determination of credibility. See and compare, *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325 (1971) and *Commonwealth v. Henderson,* 456 Pa. 234, 317 A.2d 288 (1974).

The judgment is reversed and a new trial is ordered.

MANDERINO, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

POMEROY, J., filed a dissenting opinion.

NIX, J., filed a dissenting opinion.

ROBERTS, Justice (concurring).

I join in that part of the majority opinion which deals with the district attorney's improper expression of a personal opinion as to appellant's guilt. These remarks deprived appellant of a fair trial; appellant is entitled to a new trial because his objection to the district attorney's remarks was erroneously overruled. Since the judgment must be reversed and a new trial granted on this ground, I see no reason to reach the other issues addressed by the majority.

356

POMEROY, Justice (dissenting).

I do not condone much less approve, the remarks by the District Attorney in his closing address which form the basis of the reversal in this case. I agree, however, with the trial court that these particular statements, viewed in the context of the total summation, were not "sufficiently prejudicial, in light of the overwhelming evidence against the defendant, to constitute reversible error". (Opinion of Judge Williams for the court *en banc*, appellees brief at 36). That is to say, I view the error as harmless in the constitutional sense, *viz.*, beyond a reasonable doubt. See *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971); *Commonwealth v. Henderson*, 456 Pa. 234, 317 A.2d 288 (1974); *United States v. Benson*, 487 F.2d 978 (C.A. 3, 1973). I therefore respectfully dissent.

NIX, Justice (dissenting).

I am in disagreement with the majority opinion which suggests that the remarks by the District Attorney in his closing address amounted to a personal expression of his belief as to the guilt of the defendant. Although inartfully stated, I construe these comments as merely an expression of counsel's evaluation of the weight of the testimony offered in support of the Commonwealth's case.

I would affirm the judgment of sentence.