[J-10-2025] [OAJC: Mundy, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 46 EAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 954 EDA |
| | : | 2022 entered on November 14, |
| v. | : | 2023, affirming the Judgment of |
| | : | Sentence of the Philadelphia County |
| | : | Court of Common Pleas at No. CP- |
| RASHEED MALCOLM, | : | 51-CR-0001309-2020 entered on |
| | : | March 28, 2022. |
| Appellant | : | |
| | : | ARGUED: March 5, 2025 |

## DISSENTING OPINION

**JUSTICE WECHT**                             **DECIDED: February 18, 2026**

On December 22, 2018, Kevin Harris was shot to death outside of a Philadelphia bar. The shooting was captured on video by a nearby surveillance camera. Philadelphia Police Detective James Burns was assigned to the case. He isolated an image of the shooter from the surveillance video and broadcasted the image to other on-duty police officers as part of a patrol alert. Officer Robert Lamanna saw the image and believed that the individual in the picture was Rasheed Malcolm. Detective Burns brought Malcolm in for questioning. Detective Burns and Detective John Harkins jointly interrogated Malcolm. The Commonwealth later played portions of the video of that interrogation for the jury at Malcolm's murder trial. In addition to the interrogation video, the Commonwealth called Officer Lamanna as a witness, who, based upon his prior interactions with Malcolm, was able to identify Malcolm as the individual in the surveillance video. The jury found Malcolm guilty, and the Superior Court affirmed.

Presently, Malcolm challenges the trial court's admission of portions of the interrogation video, during which the jury heard numerous statements made by Detectives Burns and Harkins expressing their personal feelings about Malcolm's answers to their questions. The Opinion Announcing the Judgment of the Court (OAJC) rejects Malcolm's arguments and affirms the judgment of sentence. I respectfully dissent. The statements and opinions expressed by the detectives were not relevant or probative of any fact or issue at trial. Moreover, even if there were some marginal probative value, it was outweighed by the danger of unfair prejudice to Malcolm.

In the interrogation video, the two detectives are seen facing Malcolm, asking questions, and making accusatory statements and assertions in order to elicit incriminating responses from Malcolm. Thirteen of those statements are expressions of the detectives' personal opinions and beliefs about the evidence against Malcolm, and about Malcolm's guilt and veracity.[1] For example, the detectives asserted that the surveillance video captured Malcolm as the shooter and that Malcolm was at the location of the shooting at that time. The detectives insisted that they did not have "the wrong guy," that Malcolm was guilty, that, despite Malcolm's assertions to the contrary, they knew that Malcolm was present at the scene on the night of the shooting, that Malcolm's assertions were absurd, suspicious, and inconsistent, and that they believed Malcolm to be guilty of the shooting. The detectives' repeated statements of this nature demonstrated over and over that they believed Malcolm to be guilty and a liar. Worse, their verbal tactics suggested to the jury that there existed other, inculpatory evidence that was not presented to the jury by the Commonwealth. All throughout the interrogation, Malcolm steadfastly asserted his innocence. Although Malcolm never confessed, the

---

[1]   *See* OAJC at 8-9.

detectives continuously overrode his denials of involvement by adamantly professing that Malcolm was, in fact, guilty, and was not believable.

The OAJC is correct about one thing. Our Rules of Evidence regarding the admission of relevant, probative evidence that is not unfairly prejudicial, as currently written, govern the admission of out-of-court statements by individuals opining about the credibility and guilt of the defendant. No new rule is necessary. Thus, in this respect, I agree not only with the OAJC,[2] but with the Concurrence as well.[3]

However, faithful application of those Rules of Evidence compels a result contrary to that reached by the OAJC. Those rules plainly prohibit the Commonwealth from playing for the jury the unredacted interrogation video of Malcolm that was infused with the detectives' opinions about Malcolm's guilt and veracity. It was error for the trial court to conclude otherwise. Law enforcement officers' opinions about the quality, nature, or credibility of the evidence against a defendant are not relevant or probative at a criminal trial. They also carry a likelihood of unfair prejudice. They suggest to the jury an evidentiary basis for the detectives' opinions that was unknown to the jury, and suggest that the jury likewise should view the evidence in the Commonwealth's favor.

Any analysis must begin by addressing the relevance of the detectives' on-video statements and accusations. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible."[4] Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action."[5] The

---

[2]     OAJC at 17.

[3]     Concurring Op. at 1.

[4]     Pa.R.E. 402.

[5]     Pa.R.E. 401.

OAJC holds that the thirteen statements are relevant to the assessment of Malcom's guilt and credibility.[6] I am not persuaded.[7]

The interrogation video does nothing to aid the jury in assessing Malcolm's credibility or guilt. It is the jury's role to assess the evidence against a criminal defendant and to determine whether the Commonwealth met its burden of proving guilt beyond a reasonable doubt. It is also exclusively the jury's function to determine issues of credibility.[8] As the Concurring Opinion observes, it is a fundamental tenet of the law that the veracity of a witness is resolved through reliance upon ordinary life experiences and common knowledge of human tendencies.[9] "As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury."[10] The opinions of law enforcement officers, who are lay fact witnesses, about Malcolm's guilt and veracity are not relevant to the jury's assessment of Malcolm's guilt and veracity. To allow those opinions to influence the jury's determination is to undermine and usurp the jury's exclusive authority to make credibility decisions.

But, let us assume, *arguendo*, that the detectives' statements had even some marginal relevance. Our analysis would not be at an end. Under Rule 403, relevant evidence must be excluded "if its probative value is outweighed by a danger of," *inter alia*,

---

[6]     OAJC at 17.

[7]     *Accord*, Concurring Op. at 2-5.

[8]     *Commonwealth v. Whack*, 393 A.2d 417, 419 (Pa. 1978) ("It is a basic tenet of our system of jurisprudence that issues of credibility are properly left to the trier of fact for resolution.").

[9]     Concurring Op. at 4; *Commonwealth v. Alicia*, 92 A.3d 753, 761 (Pa. 2014) ("[T]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness.").

[10]     *Alicia*, 92 A.3d at 761.

"unfair prejudice."[11]  This test would require us to identify the probative value of the interrogation video and then to balance that value against the danger of unfair prejudice.

The detectives' statements had no probative value.  The challenged statements presented the jury with nothing but the detectives' repeated assertions about Malcolm's guilt and deceit.  These statements amounted to nothing but irrelevant and repeated assertions of the interrogating detectives' purported beliefs.  Indeed, the sole purpose of playing the interrogation video was to present the jury with the opinions that the interrogating detectives expressed concerning Malcolm's denials of their accusations.  That is not probative of Malcolm's guilt, nor of any other issue at trial.

Moreover, the detectives' statements unnecessarily and unfairly prejudiced Malcolm's trial.  I do not share the Concurring Opinion's belief that jurors would view interrogating detectives as neutral third parties.[12]  Police officers play a critical role in criminal trials.  During *voire dire,* each juror is asked whether he or she would believe a police officer solely because he or she is a police officer.  This question evidences the fact that society naturally views police officers differently than other persons who testify at a criminal trial.  Moreover, the lead detective or arresting police officer sits at counsel's table with the prosecutor during a criminal trial.  There is, of course, nothing improper or unethical about that.  But it cannot reasonably be said that jurors somehow would believe that law enforcement officers are merely disinterested third parties instead of part of the governmental body seeking to convict the defendant.  The simple fact is that the police officers included in the case are an arm of the prosecution.  They must be treated as such for purposes of the instant legal analysis.  Here, the purpose of Detectives Burns and Harkins using these interrogation techniques was to wear down a suspect and to elicit

---

[11]     Pa.R.E. 403.

[12]     Concurring Op. at 5.

incriminating statements that could be used to secure a conviction, all to the benefit of, and on behalf of, the Commonwealth. Their statements include accusations, assertions, and opinions that are not based upon facts that were made known to the jury. They are made with certainty and finality, leaving no room for persuasive denials by Malcolm.

By design, the detectives acted with an appearance of authority and superior knowledge of the evidence against Malcolm, even though there was a substantial likelihood that their assertions were deliberately false or deceptive. Of course, an interrogating police officer may use coercive techniques, such as bluffing or lying to the suspect about evidence, or playing upon a suspect's religious or moral beliefs, in order to induce the suspect into making a confession. Detective Burns testified that he often misleads suspects, hoping to obtain a confession. Further, Malcolm had no opportunity to cross-examine Detective Harkins, and neither detective was under oath during the interrogation. The firmness and confidence with which these detectives made their accusations, disbelieved Malcolm, and opined about guilt and credibility, all of which was done while carrying a significant likelihood of falsity or deception, was highly and unfairly prejudicial.

Let us for a moment assume that the Concurring Opinion is correct that the detectives could be viewed as neutral third parties, as opposed to interested state agents. Their statements still would be highly and unduly prejudicial. The detectives were not experts. Nor did they offer anything other than their own personal opinions. Not only is there is a likelihood that the jury would consider the detectives' opinions as substantive evidence against Malcolm, but the likelihood of unfair prejudice was even more enhanced because the interrogation video suggested to the jury that the detectives had access to secret evidence, beyond what the Commonwealth presented at trial, that demonstrated

Malcolm's guilt and lack of credibility to a sufficient degree to create certainty in the detectives. The result is unfair prejudice.

Under Rule 403, the risk of unfair prejudice resulting from the opinions of the detectives, with their appearance of authority and apparent special knowledge of the evidence against Malcolm, outweighed whatever probative value these statements may have had. This is particularly so in a case where identification of the perpetrator was a challenge for the jury because Malcolm denied any participation and because the surveillance video was not clear. During deliberations, the jury requested to view a side-by-side comparison of the image extracted from the surveillance video and Malcolm. Allowing the introduction of irrelevant and prejudicial opinion evidence by the interrogating detectives, as they weighed in on whether it was Malcolm who appeared in the surveillance video, and as they accused Malcolm of lying when he said that it was not him, created unfair prejudice that plainly outweighed the probative value of the evidence.

To permit the jury to consider irrelevant evidence that has no probative value and is highly prejudicial is to create a high likelihood that the jury will defer in its assessment of guilt and credibility to nonfactual, untested, and possibly deceptive opinions of law enforcement officers. Because it is exclusively the province of the jury to evaluate the evidence of guilt and the credibility of witnesses, the trial court has no discretion to permit a detective's opinion evidence to influence such matters. Given that settled law precludes a witness from offering an opinion on the credibility of another witness,[13] there is no basis for a trial court to permit the introduction of such opinions through an interrogation video. There is no material difference between permitting a detective to take the witness stand and opine upon the veracity and guilt of the defendant, and playing a video recording of the detective offering the same opinions. Both instances invade the province of the jury,

---

[13]    *See, e.g., Alicia*, 92 A.3d at 761; Concurring Op. at 3-4.

which is the exclusive factfinder and arbiter of credibility. The trial court admitted these statements in error, and that error was an abuse of the court's discretion.

This Court has held that accusations made during an interrogation of the defendant, when introduced as evidence at the criminal trial, were prejudicial, deprived the defendant of a fair trial, and amounted to a denial of due process. In *Commonwealth v. Bolish*, the Commonwealth introduced a recording of an interrogation that was conducted by the district attorney, who several times accused the defendant of lying and who opined that the defendant was guilty.[14] We considered the interrogation comments to be "wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice."[15] We held that this was so prejudicial as to warrant a new trial.

In the context of claims of prosecutorial misconduct, this Court has held that a prosecutor may not offer his or her personal opinion on the guilt of the accused.[16] Nor may a prosecutor express a personal belief or opinion regarding the credibility of a witness.[17] A prosecutor may not do so directly or through the testimony of a witness.[18]

---

[14] 113 A.2d 464, 477 (Pa. 1955).

[15] *Id*. (quoting *Viereck v. United States*, 318 U.S. 236, 247 (1943)).

[16] *Commonwealth v. D'Amato*, 526 A.2d 300, 309 (Pa. 1987) ("[A] prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand."); *Commonwealth v. Kuebler*, 399 A.2d 116, 118 (Pa. 1979) ("Our cases leave no doubt that prosecuting attorneys of this Commonwealth may not inject highly prejudicial personal opinion" of a defendant's credibility "into evidence, thereby clearly and improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses." (internal quotations omitted)).

[17] *D'Amato*, 526 A.2d at 309.

[18] *Commonwealth v. DiNicola*, 468 A.2d 1078, 1081 (Pa. 1983) ("[A] prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand.").

This prohibition exists in our law because of the undeniably prejudicial impact that such an authority figure's personal opinions will have on the jury and on jurors' ability to consider the evidence. In *Commonwealth v. Maloney*, we stressed that a district attorney's personal opinion prejudicially engrafted that attorney's "experience and judgment [onto] the issue of guilt[.]"[19] Because the jury was required to make decisions about credibility, the district attorney's opinion about guilt "necessarily reflected his opinion as to credibility."[20] Because this opinion could have affected the jury's deliberations, we found it so prejudicial as to warrant a new trial.

In *Commonwealth v. DiNicola*, the Commonwealth elicited testimony from a police officer recounting a conversation between the defendant and a prosecutor. The police officer indicated that, in response to a question by the defendant, the prosecutor indicated his personal belief that the defendant was guilty. We held that the prosecutor's statement, introduced through the police officer, was irrelevant opinion evidence. A prosecutor cannot offer opinion testimony about the guilt of the accused, even if it comes into evidence through the testimony of a witness.[21] "Damage that may be done by an impermissible argument is compounded, not ameliorated, when a prosecutor's opinion as to guilt comes in as testimony[.]"[22] When this occurs, jurors must then "decide the weight of this evidence as compared with other evidence in the case."[23] Our cases make clear that there is no meaningful difference between opinions regarding a suspect's guilt or

---

[19]     365 A.2d 1237, 1243 (Pa. 1976).

[20]     *Id*.

[21]     *DiNicola*, 468 A.2d at 1081-82 ("[I]t would be anomalous to hold that the prosecutor's opinion as to the guilt of the accused may be legitimized if it comes in as testimony, and is, thus, evidence, rather than argument.").

[22]     *Id*. at 1082.

[23]     *Id*.

veracity that is presented to the jury through argument and that which the jurors receive through evidence. Nor is there any difference in the prejudicial impact when that opinion comes from a prosecutor or from another law enforcement officer.

Indeed, situations where the jury is permitted to hear a police detective's opinion about the defendant's guilt or veracity carry the same risk of prejudicing the defendant. It is exclusively the function of the jury to consider the evidence and to decide whether to believe the Commonwealth's version of events or the defendant's.[24]

Just as a prosecutor's personal opinion about guilt or credibility is highly prejudicial, a police detective's opinion about the same likewise intrudes upon the jury's exclusive functions. In both scenarios, the risk that the jury will afford significant weight to those opinions is impermissibly high. There is an undeniable danger that both a prosecutor and a police officer will be viewed by the jury as carrying an unwarranted appearance of authority regarding not only the defendant's credibility but also to the strength of the evidence against the defendant. Whether through the prosecutor or through a police officer, the jury will hear extraneous, irrelevant, and prejudicial personal opinions.[25]

---

[24] *Commonwealth v. Crawford*, 718 A.2d 768, 772 (Pa. 1998) ("The determination of the credibility of a witness is within the exclusive province of the jury."); *Whack*, 393 A.2d at 419.

[25] The OAJC insists that cases arising in the context of prosecutorial misconduct cannot be extended to statements made by police personnel. OAJC at 17 & 20-21, n.13. In evaluating the prejudicial impact of opinion evidence upon the jury, it matters not whether the evidence comes in through a prosecutor or a police detective. In either scenario, the personal opinions intrude upon the province of the jury and create the same danger of unfair prejudice.

Our recognition of this kind of prejudice in prosecutorial misconduct cases supports an acknowledgement that it is irrelevant whether it is a prosecutor or an interrogating police detective who is making the prejudicial accusations. The prejudice that was apparent in the interrogation video in *Bolish* did not turn upon the profession of the interrogator, but upon the prejudicial impact of the accusations contained therein. *Bolish*, 113 A.3d at 477 ("We have reread several times the district attorney's interrogations of the defendant and considering them in their entirety we are convinced that the district (continued…)

We entrust jurors every day across the Commonwealth to assess evidence and credibility. We diminish that trust, and we undermine jurors' role, by permitting them to consider inflammatory, irrelevant opinion evidence. Whether it was the detective's reference to the prosecutor's opinion in *DiNicola* or the prosecutor's presentation of the detectives' opinions in this case, the jury is being asked to hear and consider the irrelevant personal opinions of others.

Because the decision to believe the Commonwealth's version of events, or that of the defendants, is exclusively for the jury,[26] there are no circumstances—including video evidence—in which such opinion evidence is admissible.[27]

I question whether the erroneous admission of such opinion evidence is capable of being ameliorated through the administration of curative instructions.[28,] Even if an instruction somehow could mitigate the prejudice of this type of evidence, the trial court's "lackluster" instructions in this case did no such thing.[29] They were not even constructed to direct the jury how it should receive and consider the interrogation video. In response

---

attorney, in his overzeal, unintentionally went too far, and that the admission of these interrogatories or statements deprived defendant of a fair trial and amounted to a denial of Due Process.").

[26]     *Kuebler*, 399 A.2d at 118.

[27]     *Accord*, Concurring Op. at 1.

[28]     Although we generally hold that a jury is presumed to follow a trial court's instruction to disregard prejudicial remarks, *see* OAJC at 21, n. 13, limiting instructions are not always effective in curing jurors' exposure to unfairly prejudicial evidence. *See, e.g., Bruton v. United States*, 391 U.S. 123, 135-36 (1968) (acknowledging that there are some contexts in which the risk that the jury will not or cannot follow instructions is too great to be ignored); Mitchell J. Frank & Dr. Dawn Broschard, *The Silent Criminal Defendant and the Presumption of Innocence: In the Hands of Real Jurors, Is Either of Them Safe?,* 10 LEWIS & CLARK L. REV. 237, 248 (2006) ("Recent social science research has demonstrated empirically that juror comprehension of instructions is appallingly low." (internal citation omitted)).

[29]     OAJC at 21, n. 13.

to Detective Burns' false statement in the interrogation video that multiple "people" had identified Malcolm from the surveillance video, the trial court instructed the jury that there was only one witness (Officer Lamanna) who had identified Malcolm from the screenshot taken from the surveillance video, and that the jurors should disregard Detective Burns' reference to "people."[30] This instruction was not directed at the detectives' assertions regarding their opinions of the evidence or of Malcolm's credibility, nor was it an attempt to limit or explain that evidence. The trial court instead was correcting Detective Burns' false assertion that multiple people had identified Malcolm from the surveillance video. This instruction in no way addressed, let alone cured, the clear prejudice that attended the detectives' assertions regarding guilt and lack of credibility.

The OAJC asserts that it "logically follows" from this instruction that the jury was not to consider any opinions or accusations by Detective Burns or Detective Harkins that Malcolm was the individual in the surveillance video.[31] Even if true, "logically follows" is not the same as the clear direction necessary to remove the prejudice. Inference is not the same as instruction. Moreover, the OAJC's assertion is in any event incorrect. The trial court instructed the jury to consider only Officer Lamanna's testimony identifying Malcolm from the surveillance video, instead of the detectives' assertions in the interrogation video to the effect that "people" had made this identification. It does not logically follow from this limited instruction that the jury was told to disregard every accusatory statement or opinion voiced by Detectives Burns and Harkins in the interrogation video. It is not even in the realm of logic to extend the limited instruction to such a broad directive. To do so is to construct a *post-hoc* revision of what actually occurred on the record. Detectives Burns and Harkins emphatically and repeatedly

---

[30]    OAJC at 5 (citing N.T., 3/24/2022, at 29-31).

[31]    OAJC at 19.

accused Malcolm of being deceitful and of being guilty. The detectives' statements suggested to the jury that there was other evidence implicating Malcolm beyond Officer Lamanna's identification, evidence that the jury was led to believe was so convincing that the detectives believed it over Malcolm's assertions of innocence. The prejudice resulting from these statements could not have been minimized by an instruction that did not even mention these statements, let alone address them in any substantive way.

When Detective Burns testified about the surveillance video, the trial court instructed the jurors to recall that they were the fact-finders, and that what Detective Burns believed that he observed in the surveillance video was not determinative. The OAJC conceives this instruction as mitigating the prejudice caused by the interrogation video.[32] This instruction was limited by its very terms to Detective Burns' in-court testimony. It was in no way directed at the accusations that the detectives made in the interrogation video. Rather, the trial court was telling the jurors that they had to determine for themselves what the surveillance video depicted and that they did not need to defer to Detective Burns' testimony as to what *he* observed.

The OAJC also relies upon the trial court's final charge to the jury, in which the trial court instructed the jury that it had to consider and weigh the testimony of each witness and give that testimony such weight and importance "as in your judgment [it] is fairly entitled to receive[.]"[33] The difficulty with this instruction is that the detectives' interrogation accusations were not presented through the testimony of witnesses, as that plainly would not be permitted.[34] Rather, the same opinions and accusations that would have been inadmissible had they been offered through a witness came into evidence

---

[32]     OAJC at 20 (citing N.T., 3/24/2022, 138).

[33]     Id. (citing N.T., 3/25/2022, 137-38).

[34]     *Alicia*, 92 A.3d at 761.

inside the Trojan Horse of the interrogation video. The trial court's instruction regarding witnesses had no connection to the detectives' statements in the interrogation video. It is unreasonable and erroneous to determine conclusively that the jurors somehow understood that this instruction about testimony also was meant to govern how they interpreted the untested accusations and opinion presented through video evidence. The OAJC's attempts to remold these instructions into something they are not, and were not meant to be, is unavailing and unpersuasive.[35]

The tactics employed during interrogation, such as repeatedly telling the suspect that the investigators do not believe the suspect's assertions, certainly can be effective interrogation techniques. But that does not make them evidence fit for a criminal trial. These tactics may convince a defendant that the detectives believe what they are saying. They also may convince the jury that the detectives believe what they are saying. Like Malcolm, the jurors were able to see for themselves the confidence with which the detectives spoke and the conviction in their accusations and opinions. An instruction reminding the jurors that they were the final arbiter of witness testimony would do nothing to confront the accusations of deceit and guilt that were presented to the jury as evidence, nor would it inform the jurors how they should receive that information. And instruction provided in connection with other evidence did not apply by its terms to the detectives' accusations and opinions.

The trial court's error in this case may be harmless if there is no "reasonable possibility that an error might have contributed to the conviction[.]"[36] An error is harmless if the record demonstrates any of the following:

---

[35] The OAJC's attempts in this regard do not become availing or more persuasive by dint of repetition. *See* OAJC at 21, n.13.

[36] *Interest of J.M.G.*, 229 A.3d 571, 580 (Pa. 2020).

(1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.[37]

It is the Commonwealth's burden to establish beyond a reasonable doubt that any error was harmless.[38]

The Commonwealth argues that any error in the admission of the interrogation video was harmless because the trial court's instructions removed any prospect of prejudice and Officer Lamanna's in-court identification of Malcolm was untainted.

As articulated above, the trial court's instructions could not, and did not, remove the prospect of prejudice. Nor can it be said that the erroneously admitted evidence— the interrogating detectives' opinions and statements about Malcolm's guilt and veracity— was cumulative of Officer Lamanna's in-court identification of Malcolm from the surveillance video. Neither Detective Burns nor Detective Harkins was able to identify Malcolm from the surveillance video. The detectives had no personal knowledge of whether Malcolm was in the surveillance video. Their assertions that they knew Malcolm to be lying and to be guilty are not cumulative of Officer Lamanna's in-court identification of Malcolm from the surveillance video screenshot. Moreover, the jury would have received the detectives' interrogation assertions as separate pieces of evidence, not as cumulative of Officer Lamanna's identification. The detectives' emphatic assertions that Malcolm was lying, that he was guilty, and that they knew he was at the shooting, were not predicated solely upon Officer Lamanna's identification.

---

[37] *Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (Pa. 2014).

[38] *See, e.g., Commonwealth v. Story*, 383 A.2d 155, 162 n.11 (Pa. 1978) ("[T]he burden of establishing that the error was harmless beyond a reasonable doubt rests with the Commonwealth.").

The sole issue in this criminal trial came down to identity. The only image of the shooter was that shown in the surveillance video. The trial court described the video as unclear due to poor conditions. The perpetrator's face was hidden. The only identification evidence connecting that image to Malcolm was that offered by Officer Lamanna. The jury asked to see this image in order to compare it to Malcolm during deliberations. The identify of the shooter was central to the Commonwealth's case. I cannot say that the error of permitting the jury to hear the detectives' opinions about identity and Malcolm's guilt and veracity under such circumstances was harmless beyond a reasonable doubt.

The trial court committed legal error in admitting the irrelevant and prejudicial statements and opinions by the interrogating detectives as to Malcolm's guilt and truthfulness. The prejudice caused by this error was not capable of being remedied by curative instructions. Nor can this error be considered harmless. Admission of the interrogation statements, in my view, constitutes prejudicial and reversible error. Accordingly, I dissent.

Chief Justice Todd and Justice Donohue join this dissenting opinion.