Commonwealth *v.* Dulaney, Appellant.

Submitted April 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Anthony D. Pirillo, Jr.,* for appellant.

*Edward G. Rendell* and *Milton M. Stein,* Assistant District Attorneys, and *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 4, 1972:

Robert Dulaney, convicted by a jury of murder in the second degree, appeals from the judgment of sentence of four to fifteen years imprisonment.

The prosecution arose from the fatal stabbing of Leroy Johnson about midnight on a public street in Philadelphia. At trial, the Commonwealth established through the testimony of eyewitnesses that Dulaney and Johnson initially engaged in a verbal argument in a bar; that they then parted and went their separate ways but fortuitously met again a few blocks away where the argument was renewed (this time more heatedly) ; that Dulaney drew a knife and inflicted the fatal stab wound in Johnson's chest.

The Commonwealth also introduced the testimony of two police officers who stated that following the stabbing they attempted to gain custody of Dulaney by effectuating a voluntary surrender; that twice his parents notified them that Dulaney would submit to arrest at their home but in these instances he failed to appear; that on the third such arranged date, three days after the stabbing, Dulaney was present and taken into custody.

The arresting officers also testified that at the time of the arrest, Dulaney appeared "glassey-eyed" and complained "of not feeling too good" so they escorted him to the Philadelphia General Hospital where a doctor examined him and informed the officers Dulaney was under the influence of narcotics.

Dulaney was then taken to police headquarters where he was immediately given notice of his constitu-

tional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). According to the police witnesses, although Dulaney may have been under the influence of drugs, he gave every indication of understanding his constitutional rights and answered responsively when asked a series of questions to determine if he understood and waived these rights. Asked to "explain the murder of Leroy Johnson", Dulaney responded by saying, "I stabbed him . . . thats all I have to say."

Testifying in his own defense at trial, Dulaney said he was a drug addict and Johnson was the collecting agent and strong arm man for a local drug supplier; that the argument which precipitated the stabbing involved a debt Dulaney owed for drugs and he drew the knife only after Johnson threatened him and reached for a gun. During cross-examination the district attorney asked Dulaney if he "acted out of fear or, if you want to call it self-defense" why he hadn't so told the police when he was questioned after his arrest. Subsequently, in his closing argument to the jury the district attorney in part said the following: "Now, I ask you, junkie or no junkie, if you had killed a man in self-defense and an officer, a detective in Homicide Division, and you knew you had been apprehended and this was it, asked you explain the murder of Leroy Johnson, what would you say? What would you say? You'd say 'Maybe I did it. I did it, but listen, I did it because I was afraid of him. He had a gun . . . . Honest, Detective, I didn't mean to kill him. I wouldn't have killed him, but I was scared . . . .' You wouldn't say 'I stabbed him' and leave it at that. *If there was a reason you stabbed him, you'd want the detective to know from the very, very beginning . . . . But the first thing you do once the police finally apprehended you and asked you explain the murder, boy they couldn't*

*get me to stop talking if they said explain the murder and I had murdered somebody in self-defense, they couldn't shut me up until I told them every ramification of why I was afraid of him, what a bad guy he was, how he was an enforcer for a dope ring. They couldn't shut me up until I told all that. But all this defendant said is 'I stabbed him' and we didn't hear the story of self-defense until five months later. You think about that.*" (Emphasis supplied.)

We rule that under the circumstances, the district attorney's argument commenting upon Dulaney's exercise of his constitutional right to remain silent when questioned by the police and urging the jury to draw an adverse inference from his exercise of this right constituted prejudicial error and mandates a new trial. We reject the Commonwealth's position that having waived his right to remain silent in the beginning of the interrogation by admitting the stabbing, Dulaney was then foreclosed from ever asserting the right again. As aptly stated in *Miranda v. Arizona,* supra, "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease . . . . [A]ny statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." 384 U.S. 436, 473-74, 86 S. Ct. 1602, 1627-1628.

The instant situation is distinctly different from that reviewed in *Commonwealth v. Camm,* 443 Pa. 253, 277 A. 2d 325 (1971), wherein the defendant attempted to take the stand at trial and cut short or limit the questioning by exercising the privilege. In the courtroom, it is vital for the triers of fact to have the testimony before them fully explored and tested, but an incomplete pretrial statement will never reach the factfinders unless the prosecution chooses to present it.

Moreover, the Court in *Grunewald v. United States,* 353 U.S. 391, 77 S. Ct. 963 (1957), recognized the difference in the motivations influencing the exercise of the privilege at trial, and the exercise of the privilege in proceedings that are uncounseled and secret. The lack of procedural rights "are crucial in weighing whether a plea of the privilege is inconsistent with later exculpatory testimony on the same questions, for the nature of the tribunal which subjects the witness to questioning bears heavily on what inferences can be drawn from a plea of the Fifth Amendment . . . . Innocent men are more likely to plead the privilege in secret proceedings, where they testify without advice of counsel and without opportunity for cross-examination, than in open court proceedings, where cross-examination and judicially supervised procedure provide safeguards for the establishing of the whole, as against the possibility of merely partial truth." 353 U.S. 391, 422-23, 77 S. Ct. 963, 983.

It must be stressed that we deal here not with the case of a full or detailed statement given to the police, only to be directly contradicted by the accused's in-court testimony. Instead, we are concerned with the bare admission of perpetration of the physical act with no elaboration whatsoever as to the circumstances. To refuse to present his defense to the police was not only a constitutional right of the accused, but indeed probably an advisable course to take. For the Commonwealth to use this fair assertion of a constitutional right as an admission of guilt was to fly in the face of the Fifth Amendment and the judicial decisions in execution thereof. See and compare, *Hunt v. Cox,* 312 F. Supp. 637 (E.D. Va. 1970).[1] Not content with the in-

---

[1] See also *United States ex rel. Young v. Follette,* 308 F. Supp. 670 (S.D. New York 1970), where the court held that it was error to use appellant's silence at the time of custody to impeach his in-

troduction of the testimony concerning appellant's silence, the Commonwealth exploited the incident in its summation to the jury.

Judgment reversed and a new trial is ordered.

court testimony. The *Young* Court, relying on *Fowle v. United States*, 410 F. 2d 48 (9th Cir. 1969), rejected the state's argument that the restricted use of petitioner's silence to impeach credibility should be permitted. The Commonwealth in the case at bar cites the case of *United States v. Ramirez*, 441 F. 2d 950 (C.A. 5th Cir. 1971) in its brief. Although the holding of that case does support the state's position, we find the decision to be against the weight of authority and to be incompatible with the true intent of the Fifth Amendment.