369 A.2d 846

**COMMONWEALTH of Pennsylvania**

v.

**George Justice MITCHELL, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 16, 1975.

Decided Feb. 18, 1977.

---

Edward F. Browne, Jr., Assistant Public Defender, Lancaster, for appellant.

Robert A. Longo, Assistant District Attorney, and D. Richard Eckman, District Attorney, Lancaster, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On appeal from his conviction for theft, appellant claims that the trial judge erred (1) in permitting testimony by the arresting officer that appellant chose to remain silent, and (2) in prohibiting appellant from offering witnesses who would testify that a third party had told them that he, and not appellant, had committed the crime. We reverse on the first ground and therefore do not reach the second.[1]

1. Since the issue may arise on remand we note that we agree with the trial judge's ruling as to the admissibility of the declaration against penal interest. At the time of appellant's trial (October 28, 1974) the law on such declarations was to be found in *Commonwealth v. Hackett*, 225 Pa.Super. 22, 307 A.2d 334 (1973). There we held that such declarations should be admitted when they "(1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pre-trial

The arresting officer testified that after giving the *Miranda* warnings, he questioned appellant as follows:

I then asked him about the burglary at Doctors Brady, Kegel and France Offices, and he denied any knowledge of the burglary.

I then confronted him with the lug wrench [found at the scene of the burglary] and told him that this is how I broke the case, and he immediately made recognition of the lug wrench. He said, oh, that was ripped off, stolen from my apartment sometime in April or May, along with a stereo set. He said, I have a lot of Toyota tools in my apartment.

I then advised him that I had contradictory information regarding his possession of the lug wrench, and then he said he had no more to say and would commit suicide.

THE COURT: What is that?

THE WITNESS: He had no more to say, and he would commit suicide.

THE COURT: I don't get the commit suicide. Did he say he would commit suicide?

or during the trial itself." *Id.* at 29–30, 307 A.2d at 338. Here, the trial judge found that the second of these requirements was not met. In this regard, it should be noted that before appellant's trial the Supreme Court had decided *Commonwealth v. Nash,* 457 Pa. 296, 324 A.2d 344 (1974), in which the Court appeared to be sharply divided and therefore could not be said to have approved *Hackett.* Indeed, the clearest statement on *Hackett* is Justice ROBERTS' severe criticism of it in his concurring opinion. *Id.* at 305–06 n. 4, 324 A.2d at 348 n. 4. *See* Note, *Commonwealth v. Nash: Admissibility of Declarations Against Penal Interest,* 48 Temp.L.Q. 796 (1975). Nevertheless, the trial judge's ruling was correct. As in *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), the portion of the declarant's statement that exculpated the defendant was not against the declarant's penal interest. A statement "exonerating any . . . possible accomplices did not subject the declarant to any additional charges or more severe punishment and in no way could be considered to adversely affect his penal interest." *Id.* at 584, 337 A.2d at 558, citing *United States v. Seyfried,* 435 F.2d 696 (7th Cir. 1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971).

THE WITNESS: He would commit suicide if he went to the county prison, Your Honor.

N.T. 105–06.

Defense counsel timely objected to the officer's testifying that appellant had said he had no more to say.[2] The objection was overruled; a cautionary instruction was requested and denied; and the objection was properly preserved by post-trial motions.

■■■ In his opinion the trial judge made two decisions: first, that by making a statement to the arresting officer appellant had waived his right to remain silent; and second, that the testimony regarding appellant's statement that he had nothing to say "[did] not amount to a statement by the officer that the defendant remained silent after being advised of his constitutional rights." We agree with the first of these decisions, that appellant waived his right to remain silent when he was initially willing to answer the officer's questions. However, we do not agree with the second. A waiver of the right to remain silent may be withdrawn, and the right asserted, *see Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. Dulaney*, 449 Pa. 45, 48, 295 A.2d 328, 330 (1972); *Commonwealth v. Williams*, 224 Pa.Super. 298, 300, 307 A.2d 289 (1973); and appellant, by stating that he had no more to say, did precisely that.[3] Had appellant initially

2. Since defense counsel did not object to the testimony regarding appellant's statement that he would commit suicide, we are not called upon to decide whether that statement would be admissible as volunteered, notwithstanding appellant's invocation of his Fifth Amendment rights, or inadmissible as an integral part of the statement expressing the desire to remain silent.

3. We have no difficulty in finding that appellant *asserted* his right to remain silent, even though the form that assertion took was seemingly casual. We cannot expect suspects under interrogation to talk like lawyers. In *Commonwealth v. Dulaney, supra,* the defendant stated to police: "I stabbed him . . . that's all I have to say." The Supreme Court found that the second half of this sentence constituted an assertion of the right to remain silent. 449 Pa. at 48, 295 A.2d at 330.

asserted his right to remain silent, the prosecutor could not have elicited testimony calling the jury's attention to that assertion, because to do so would be to use appellant's silence against him. *Griffin v. California*, 380 U. S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). It follows that neither may the prosecutor elicit testimony calling the jury's attention to a belated assertion of the right, for again, to do so would be to use appellant's silence against him. The right not to have one's silence used against one does not depend upon whether the right is asserted at the beginning of interrogation or later on. *Commonwealth v. Dulaney, supra; Commonwealth v. Greco*, 227 Pa.Super. 19, 323 A.2d 132 (1974); *Commonwealth v. Williams, supra.*[4] It follows that defense counsel's objection to the testimony was well-taken, and that the trial judge erred in overruling the objection.

■ Some of the appellate decisions indicate that such error by itself requires the grant of a new trial. *See Commonwealth v. Dulaney, supra* at 48, 295 A.2d at 330; *Commonwealth v. Greco, supra*, 227 Pa.Super. at 22, 323 A.2d at 134. However, that is not the only alternative, as is evident from the Supreme Court's recent decision in *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237

4. We recognize that this rule may present a prosecutor with a difficult choice. Since the suspect initially waived his right to remain silent, the statements made to the police up until the assertion of the right are admissible. The assertion, however, is not. Thus here the prosecutor could have properly elicited from the officer all the testimony through the words, "I then advised him that I had contradictory information regarding his possession of the lug wrench . . . "; but he should have cut off the testimony there, so that the officer would not add, " . . . and then he said he had no more to say . . . ." It may be that in some cases a prosecutor may fear that to instruct the officer that this is the way he must testify will make a better case for the defendant than for the Commonwealth. That is the difficult choice to which we refer: either the prosecutor must confine himself to eliciting the admissible testimony, or he must choose to forego the testimony entirely. However, that this choice may sometimes have to be made is inherent in the protections afforded an accused by the United States Constitution.

(1976). In some cases the trial judge might justifiably decide at the time of defense counsel's objection that the error could, by the end of the prosecution's case, prove harmless. He might then conclude that it was sufficient to give a cautionary instruction to the jury to diregard the inadmissible testimony, explaining fully both the defendant's constitutional right to remain silent and the rule that the jury may draw no inferences of guilt from his assertion or re-assertion of that right. On appeal we would then determine whether the cautionary instruction was sufficient, or whether on the particular facts of the case the error was so prejudicial as to require a new trial. Here, however, we do not reach this question, for here, when defense counsel requested a cautionary instruction, the trial judge refused to give any. In order for an error of constitutional dimension, as this error was, to be found harmless, the Commonwealth must establish beyond a reasonable doubt that the error did not contribute to the judgment. *Commonwealth v. Hale,* 467 Pa. 293, 356 A.2d 756 (1976). Because the Commonwealth did not file a brief in this appeal, and because without the inadmissible testimony the case against appellant was largely circumstantial, we cannot conclude that the error was harmless. Accordingly, a new trial must be granted.

The judgment of sentence is reversed and the case remanded for a new trial consistent with this opinion.

HOFFMAN, J., concurs in the result.

PRICE, J., files a dissenting opinion in which WATKINS, President Judge, and VAN der VOORT, J., join.

PRICE, Judge, dissenting:

The majority correctly postulates that any reference by the prosecution at trial to an accused's assertion of his right to remain silent would be prejudicial. *E. g., Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966); *Commonwealth v. Dulaney,* 449 Pa.

45, 295 A.2d 328 (1972); *Commonwealth v. Greco*, 227 Pa.Super. 19, 323 A.2d 132 (1975). I do not disagree, therefore, with the majority's statement of the law. However, I do believe that the majority has incorrectly applied the law to the present fact situation.[1]

The appellant was accused of committing a burglary of a medical office in Lancaster, Pennsylvania, which resulted in the theft of a quantity of drugs. After his arrest, and despite being warned that he had a right to remain silent, the appellant readily responded to police questioning concerning the incident. First, under general examination, the appellant emphatically denied any knowledge of the burglary. Next, the appellant immediately identified a lug wrench which had been found at the scene of the crime as one which he owned, explaining that the wrench, and a stereo set, had been recently stolen from his apartment. The police examiner then advised the appellant that his explanation was contradicted by other information which had been received by the police. The appellant failed to expand or vary his explanation, stating that "he had no more to say. . . ."

Unlike the majority, I do not interpret the appellant's remark as an assertion of his right to remain silent. I believe that the appellant's statement, viewed in context, indicates solely that the appellant had finished relating his knowledge of the questioned incident to the police. We must distinguish circumstances in which an accused truly exercises his right to remain silent by withdrawing his consent to be questioned from those circumstances in which an accused can no longer answer police questions because he has completely told all that he is able to tell.

I would affirm the judgment of sentence.

WATKINS, President Judge, and VAN der VOORT, J., join in this dissenting opinion.

1. I dispute the rationale of the majority only in regard to the issue involving the appellant's right against self-incrimination.