648 A.2d 777

COMMONWEALTH of Pennsylvania, Appellee,

v.

Vittorio V. DiPIETRO, Appellant.

Supreme Court of Pennsylvania.

Submitted Feb. 15, 1994.

Decided Oct. 14, 1994.

Jerry A. Philpott, Duncannon, for appellant.

Daniel Stern, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

MONTEMURO, Justice.

Appellant, Vittorio DiPietro, seeks a new trial based on improper prosecutorial references to his post-arrest silence. A jury found Appellant guilty of aggravated assault[1] and

---

1. 18 Pa.C.S.A. § 2702.

recklessly endangering another person.[2]

On December 3, 1990, Appellant, in an allegedly purposeful manner, drove his automobile over a curb and struck the victim, inflicting severe injuries. During the trial, State Police Trooper Donald Harriman testified that he administered the following Miranda warning to Appellant:

> My name is Trooper Don Harriman of the Pennsylvania State Police. You have an absolute right to remain silent, and anything you say can and will be used against you in a Court of law. You also have a right to talk to an attorney before and have an attorney present with you during questioning. If you cannot afford to hire an attorney, one will be appointed to represent you without charge before any questioning if you desire. If you decide to answer any questions, *you may stop any time you wish.*

T.T. at 139–40 (emphasis added). Appellant then signed a waiver form stating:

> I fully understand the statement warning me of my rights, and I am willing to answer questions. I do not want an attorney, and I understand that *I may stop answering questions at anytime during the questioning.* No promises have been made to me, nor have I been threatened in any manner.

*Id.* at 140 (emphasis added).

Trooper Harriman testified that Appellant stated he would discuss portions of the events surrounding the incident. *Id.* at 207. After relating certain basic facts, Appellant stopped talking. Trooper Harriman understood that Appellant did not wish to talk anymore. *Id.* at 209. At no time did Appellant state that the incident was an accident. Instead, Appellant waited until trial to raise the defense of accident.

Appellant contends that the prosecutor improperly referenced his post-arrest silence on two occasions. During direct examination of Trooper Harriman, the prosecutor asked, "During the course of that conversation, Trooper Harriman, did he tell you that this incident was an accident?" *Id.* at 141.

**2.** 18 Pa.C.S.A. § 2705.

Trooper Harriman replied, "No." *Id.* The trial judge over-ruled defense counsel's objection. In his closing argument, the prosecutor, assuming the incident was an accident, stated:

[W]hy doesn't he tell that man, Trooper Harriman, My golly, good grief, what did I do? It was a terrible, terrible accident. I've been having this car problem. The brakes are bad. It kept stalling.

When do we hear that? We hear that today from the witness stand. We didn't hear that from any of the police officers. Doesn't common sense simply tell you that if you're in that kind of situation, that would be the first thing out of your mouth?

[Objection]

I would suggest that that would be the first thing out of a man's mouth when he's talking to this officer about this specific incident.

*Id.* at 233–4. On neither occasion did the court issue curative instructions. Appellant argues that these references to his constitutional right to remain silent constitute error mandating a new trial.

In *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976), this Court stated:

The law is clear. It is reversible error to admit evidence of a defendant's silence at the time of arrest. The prohibition of any reference to an accused's silence reflects the court's desire that an accused not be penalized for exercising his constitutional rights. It is a recognition that most lay persons would view an assertion of the constitutional privilege as an admission of guilt.

*Id.* at 403–4, 350 A.2d at 828 (citations omitted). *See also Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624–25 n. 37, 16 L.Ed.2d 694 (1966) (the prosecution may not use at trial the fact that defendant stood mute or claimed his privilege in the face of accusation). Any reference to an accused's post-arrest silence may impermissibly affect the verdict. *Commonwealth v. Turner,* 499 Pa. 579, 585, 454 A.2d 537, 540 (1982). Merely the " 'reasonable possibility' that the

error did contribute to the verdict negates any notion of harmlessness." *Id. See also Commonwealth v. Clark,* 533 Pa. 579, 587, 626 A.2d 154, 158 (1993) ("an impermissible reference to the accused's post-arrest silence is innately prejudicial").

It is irrelevant whether a defendant elects to assert the constitutional right to remain silent from the outset or makes a voluntary statement and then asserts the right. *Commonwealth v. Dulaney,* 449 Pa. 45, 295 A.2d 328 (1972); *Commonwealth v. Williams,* 252 Pa.Super. 435, 381 A.2d 1285 (1978). *See also Commonwealth v. Mitchell,* 246 Pa.Super. 132, 137, 369 A.2d 846, 848 (1977) ("the right not to have one's silence used against one does not depend upon whether the right is asserted at the beginning of interrogation or later on"). "The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." *Miranda v. Arizona,* 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). A prosecutor may not make any references to a "defendant's resumption of silence." *Commonwealth v. Greco,* 227 Pa.Super. 19, 23 n. 4, 323 A.2d 132, 134 n. 4 (1974), *aff'd,* 465 Pa. 400, 350 A.2d 826 (1976). *See also Commonwealth v. Hinds,* 244 Pa.Super. 182, 191, 366 A.2d 1252, 1257 (1976) ("testimonial reference to an accused's assertion of his rights, whether made at the time of his arrest or at some later time, is prejudicial and requires that a new trial be granted").

This Court has held that under some circumstances, adequate curative instructions may remedy an improper reference to an accused's post-arrest silence. *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976). *See also Williams,* 252 Pa.Super. at 446, 381 A.2d at 1291 (*any* reference to an accused's silence after arrest constitutes reversible error absent prompt and adequate cautionary instruction). The trial judge should, among other factors, consider: 1) "the nature of the reference, ... whether it was a specific comment on the accused's silence ... or merely a reference to the fact that incriminating evidence of the Commonwealth was unde-

nied or contradicted; and 2) whether the accused's silence was exploited by the district attorney." *Maloney*, 469 Pa. at 349, 365 A.2d at 1241. Exploitation occurs when the district attorney asks the jury to "draw an improper inference." *Id.*

In *Commonwealth v. Dulaney*, 449 Pa. 45, 295 A.2d 328, Dulaney, after being advised of his constitutional rights, explained the murder by stating, "I stabbed him. . . . that's all I have to say." *Id.* at 47, 295 A.2d at 330. At trial, Dulaney testified he acted in self-defense. On cross-examination, the district attorney asked Dulaney why he neglected to so inform the police when explaining the events. Later, during closing argument, the district attorney stated:

> Now, I ask you, junkie or no junkie, if you had killed a man in self-defense and an officer, a detective in Homicide Division, and you knew you had been apprehended and this was it, asked you explain the murder of Leroy Johnson, what would you say? What would you say? You'd [sic] say "Maybe I did it. I did it, but listen, I did it because I was afraid of him. He had a gun. . . . Honest, Detective, I didn't mean to kill him. I wouldn't have killed him, but I was scared. . . ." You wouldn't say "I stabbed him" and leave it at that. *If there was a reason you stabbed him, you'd [sic] want the detective to know from the very, very beginning. . . . But the first thing you do once the police finally apprehended you and asked you to explain the murder, boy they couldn't get me to stop talking if they said explain the murder and I had murdered somebody in self-defense, they couldn't shut me up until I told them every ramification of why I was afraid of him, what a bad guy he was, how he was an enforcer for a dope ring. They couldn't shut me up until I told all that. But all this defendant said is "I stabbed him" and we didn't hear the story of self-defense until five months later. You think about that.*

*Id.* at 47–8, 295 A.2d at 330 (emphasis in original). We ruled that the district attorney's specific reference to Dulaney's silence, combined with exploitative closing comments suggesting damaging inferences from that silence, constituted prejudicial error necessitating a new trial. *Id.*

In *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537, the defendant, charged with voluntary manslaughter, claimed he acted in self-defense. On cross-examination, the district attorney asked the defendant, who had never made a statement to the police, if he had ever told the police that someone was shooting at him. *Id.* at 581, 454 A.2d at 538. Before defendant could answer, defense counsel objected and moved for a mistrial. The trial court sustained the objection, denied the motion, and *sua sponte* gave the jury cautionary instructions. *Id.* This Court concluded that the error could not be considered harmless and remanded for a new trial. *Id.* at 585, 454 A.2d at 540.

In *Commonwealth v. Williams*, 252 Pa.Super. 435, 381 A.2d 1285, the Superior Court of Pennsylvania held that the trial court committed reversible error when it admitted testimony by the interrogating police officer referencing defendant's post-arrest silence.

Q. What did you do having met Mr. Williams?

A. I asked him for his personal identification, name, address, date of birth, inquired as to how he came into possession of a vehicle that he was operating, that of Mr. Rigney's [the victim].

Q. Did he tell you how he came in possession of it?

A. He said that on the date prior to that, the 16th, he had found the car parked along a street with the keys in it and took it for a ride.

Q. Then what happened?

A. After that he elected to remain silent.

*Id.* at 442–3, 381 A.2d at 1289. As in the present case, the defendant started to speak, but then elected to remain silent. Not only did the trial court deny defendant's motion for a mistrial, but it also declined to provide a cautionary instruction.

This Court recently reaffirmed these principles in *Commonwealth v. Clark*, 533 Pa. 579, 626 A.2d 154. In *Clark*, appellant alleged ineffectiveness of trial counsel due to counsel's

failure to object when the prosecution compelled appellant to admit that he had not asserted self-defense prior to trial.

Q. Mr. Clark, you started running back down 19th Street, didn't you?

A. Yes I did.

Q. Started stuffing the gun back in your pants didn't you?

A. Yes.

Q. Where were you going?

A. I was going home.

Q. Did you *ever* think of telling the police what happened?

A. No.

Q. I withdraw that. Don't answer that. Withdraw that. I withdraw that question, Judge. Mr. Clark, let me ask you this: After you fired the shot, the first shot, what happened?

*Id.* at 583, 626 A.2d at 155–6 (emphasis in original). Appellant argued that a reasonable juror could interpret "ever" to refer to his post-arrest silence. After concluding that appellant asserted a claim of arguable merit and there existed no reasonable basis for trial counsel's failure to object, we examined whether the alleged ineffectiveness prejudiced appellant. Relying on *Commonwealth v. Turner*, we concluded that, "an impermissible reference to the accused's post-arrest silence is innately prejudicial," and granted a new trial. *Clark*, 533 Pa. at 587, 626 A.2d at 158.

These cases illustrate the gravity of an improper prosecutorial reference to an accused's post-arrest silence. While in some situations, an adequate cautionary instruction may negate any potential prejudice flowing from such a reference, *Maloney*, 469 Pa. 342, 365 A.2d 1237, in other situations, even a prompt cautionary instruction may not render the error harmless. *Turner*, 499 Pa. 579, 454 A.2d 537. In *Clark*, 533 Pa. 579, 626 A.2d 154, we held that a testimonial reference creates sufficient prejudice to satisfy the third prong of an ineffectiveness of counsel claim. When a prosecutor exploits an accused's post-arrest silence during closing argument, the prejudice is compounded. In *Dulaney*, 449 Pa. 45, 295 A.2d

328, such exploitation constituted reversible error. *See also Commonwealth v. Easely,* 483 Pa. 337, 343, 396 A.2d 1198, 1202 (1979) (reversible error to permit district attorney to comment adversely on accused's silence during closing argument); *Commonwealth v. Stafford,* 450 Pa. 252, 262, 299 A.2d 590, 595-6, *cert. denied,* 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973) (prosecutor's remarks during summation concerning accused's silence at time of arrest until taking the stand constitute prejudicial error requiring new trial).

In the present case, Trooper Harriman instructed Appellant, "You may stop any time you wish." T.T. at 140. Appellant signed a waiver form stating, "I understand that I may stop answering questions anytime during the questioning." *Id.* Appellant related portions of the incident and then stopped talking. While Appellant did not specifically state, "I do not wish to answer any more questions, I would like an attorney," Trooper Harriman clearly understood that Appellant no longer wished to talk. *Id.* at 209. *See Commonwealth v. Mitchell,* 246 Pa.Super. 132, 137 n. 3, 369 A.2d 846, 849 n. 3 (1977) (a court cannot expect suspects under interrogation to talk like lawyers and the court had no difficulty determining the suspect re-asserted his right to silence even though that assertion took a casual form). Appellant, after talking about portions of the incident, asserted his constitutional right to remain silent.

During trial, Appellant claimed that the entire incident was an accident. To rebut this defense, the prosecutor asked Trooper Harriman if Appellant, after his arrest, had stated that the incident was an accident. Trooper Harriman replied, "No." Defense counsel objected. As in *Maloney,* 469 Pa. 342, 365 A.2d 1237, this improper reference might have been negated by an adequate curative instruction.[3] As in *Williams,* 252 Pa.Super. 435, 381 A.2d 1285, the trial court overruled defense counsel's objection and failed to issue curative instruc-

---

3. As previously stated, the court provided no curative instructions. However, because the district attorney exploited Appellant's post-arrest silence during closing argument, we need not address whether the testimonial reference alone constitutes reversible error as it did in *Williams.*

tions. During closing argument, the prosecutor proceeded to compound the prejudice by exploiting Appellant's silence in the same manner as the district attorney in *Dulaney*, 449 Pa. 45, 295 A.2d 328.

The Commonwealth and the Superior Court argue that Appellant waived his right to remain silent when he started speaking. The Superior Court relies on *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987), where we stated:

> The basis for the exclusion from evidence of a defendant's *silence* in the face of an accusatory statement by the police is the injustice of penalizing the exercise of the privilege against self-incrimination. That principle does not extend to instances in which the defendant does not remain silent but instead volunteers equivocal responses to police questioning.

*Id.* at 475, 533 A.2d at 81 (citations omitted) (emphasis in original). However, *Jermyn* is factually distinguishable.

In *Jermyn*, the "appellant did not exercise his right to remain silent. He elected to respond to the police officer's accusations in an equivocal fashion, neither admitting nor denying guilt but implicitly challenging police to prove their charge." *Id.* The appellant in *Jermyn*, responded to direct accusations made by the interrogating officer. We held that the right to remain silent was not implicated and that both the evasiveness of appellant's answers and the inferences drawn therefrom, could properly be considered by the fact finder. *Id.*

In the present appeal, Trooper Harriman elicited certain basic facts surrounding the incident. Appellant then reasserted his right to remain silent. No discussion of the accidental nature of the incident ever occurred. Trooper Harriman never accused Appellant of acting intentionally and Appellant never responded equivocally. The testimonial reference to Appellant's post-arrest silence did not highlight an evasive response to direct accusations. Instead, Trooper Harriman's testimony impermissibly focused on Appellant's resumption of silence after voluntarily relating basic facts.

The Commonwealth cites to *Commonwealth v. Bunting,* 284 Pa.Super. 444, 426 A.2d 130 (1981), and *Commonwealth v. Quartman,* 253 Pa.Super. 460, 385 A.2d 429 (1978), for the proposition that "[a] reference to post-arrest silence is not a basis for a new trial if a curative instruction could have remedied the harm, was not given, and trial counsel and the court could not have reasonably concluded that an instruction would reinforce the inference of guilt in the minds of the jurors." Brief for Appellee at 8. However, in this case, unlike in *Quartman* and *Bunting,* the district attorney, in addition to eliciting a testimonial reference to Appellant's post-arrest silence, proceeded to exploit Appellant's silence during closing argument by suggesting that the jury draw damaging inferences from that silence.

The testimonial reference to Appellant's post-arrest silence, the absence of an adequate cautionary instruction, and the further exploitation of Appellant's post-arrest silence during closing argument constitute reversible error and mandate a new trial. Judgment of sentence vacated and case remanded for a new trial.[4]

CASTILLE, J., files a dissenting opinion.

MONTEMURO, J., is sitting by designation.

CASTILLE, Justice, dissenting.

The majority has granted a new trial based on their conclusion that on two occasions the prosecution improperly referred to Appellant's post-arrest silence at trial. I believe that the real question presented is whether those remarks were improper based on the evidence and arguments presented concerning Appellant's post-arrest *statements.* Because the majority confuses post-arrest silence with post-arrest statements made after defendant had waived his right to remain silent, I must respectfully dissent.

4. The Pennsylvania District Attorney's Association filed a Petition seeking permission to file an amicus brief nunc pro tunc. The Petition is Denied.

The pertinent facts are that shortly after a verbal fight with the victim Robert Kauffman, at a bar where both had been drinking, Appellant drove his car over a curb and smashed the victim against the wall causing serious bodily injury.[1] Appellant, who was accompanied by his girlfriend Pat Little, immediately drove away. Later that evening, Ms. Little, called the police to let them know she had been involved in an incident and that she would like to have a police officer come to her house to talk about it. At about the same time, police had learned of the Appellant's whereabouts and Appellant was arrested. After being given his *Miranda*[2] warnings both verbally and in writing, Appellant expressly waived his right to remain silent by executing a waiver form. The waiver form stated:

I fully understand the statement warning me of my rights, and am willing to answer questions. I do not want an attorney, and I understand that I may stop answering questions at anytime during the questioning. No promises have been made to me, nor have I been threatened in any manner.

After stating, "[i]'ll tell you about the incident," Appellant revealed to Trooper Harriman, that he and his girlfriend were at the hotel bar that evening and that although he drank six beers, he was not intoxicated. He also stated that he did not know the other individuals at the bar, but that they had words, and that when they left the bar, the individuals were waiting for Appellant who was accompanied by Ms. Little. Shortly after divulging this information, Appellant invoked his right to remain silent.

At trial, Appellant for the first time testified that the incident was an accident.[3] The prosecution cross-examined

---

1. A jury found Appellant guilty of aggravated assault and recklessly endangering another person in accordance with 18 Pa.C.S. § 2702 and 18 Pa.C.S. § 2705 respectively. The question of whether Appellant's conduct was purposeful or accidental was a main issue at trial.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. According to Appellant's trial testimony, as he and Ms. Little left the bar to go home, two or three people, including Robert Kauffman,

Appellant regarding why his initial statements to the police following waiver of his rights about the incident did not include the version he now testified to at trial. Specifically, the prosecution asked, *"During the course of that conversation,* Trooper Harriman, did [defendant] tell you that this incident was an accident?"* to which Trooper Harriman replied in the negative. T.T. at 141 (emphasis added). Despite the fact that this inquiry specifically referred to the conversation between Appellant and Trooper Harriman *before* he reasserted his right to remain silent, the majority nevertheless holds that the prosecution's examination regarding the omission of such information in his initial police statement was a violation of Appellant's right to remain silent. However, the prosecution merely attempted to explore factual inconsistencies between the Appellant's previous version of the events and his testimony at trial, not his silence upon his arrest. As demonstrated by the record, the prosecution referred exclusively to Appellant's post-arrest statements, not to his post-arrest silence following those statements.

Indeed, no reference was made to Appellant's exercise of his right to remain silent until defense counsel cross-examined the trooper and specifically inquired whether such a privilege had been asserted at some point. By narrowing the scope of its inquiry to those statements made after appropriate warnings and *before* the invocation of the right to remain silent, the Commonwealth did not breach the parameters of the post-arrest silence rule which is intended to prevent the jury from believing the accused's silence constitutes an admission of guilt. *Commonwealth v. Turner,* 499 Pa. 579; 454 A.2d 537 (1982) (reference to defendant's silence at arrest is substantially prejudicial).

In reaching its holding, the majority relies upon several cases which are inapposite from the circumstances at hand because the cases involve only situations wherein the accused

verbally confronted him in the parking lot. Appellant then got inside the car and started the engine. When he attempted to reverse the car, the engine stalled. Appellant put the gear in neutral, restarted the engine while revving it up, and then accidently put the gear in forward, striking the victim.

remained completely silent after arrest. *Commonwealth v. Easley*, 483 Pa. 337, 396 A.2d 1198 (1979); *Commonwealth v. Greco*, 465 Pa. 400, 350 A.2d 826 (1976); *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982); *Commonwealth v. Clark*, 533 Pa. 579, 626 A.2d 154 (1993). The majority confuses the well-settled premise that the Commonwealth may not make reference to one's *silence at arrest*, with the right to cross-examine regarding post-arrest *statements*. *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982). Indeed, none of these cases involve attempts by the prosecution to cross-examine the appellant regarding inconsistencies between appellant's trial testimony and pretrial *statements*, to police, which is the case here.

We have repeatedly held that the right to remain silent is not violated where a prosecutor attempts to impeach a defendant's credibility by establishing an inconsistency between the appellant's post-arrest statement and his trial testimony. *Commonwealth v. Beavers*, 492 Pa. 522, 424 A.2d 1313 (1981); *Commonwealth v. Stetler*, 494 Pa. 551, 431 A.2d 992 (1981). Here, the Commonwealth was properly comparing the accused's "new" defense at trial with his post-arrest statement, thereby demonstrating an inconsistency with Appellant's original account of the incident. It would be an absurd result to allow a defendant, who has waived the right to remain silent, to furnish statements to the police and subsequently permit him to hide behind the shield of the Fifth Amendment and not be questioned about the contents of those statements that he did make. We stated, "[o]nce a suspect elects to make responses, the import of those responses are properly available for the jury's consideration. In such a case *the right to remain silent is not implicated.*" *Commonwealth v. Jermyn*, 516 Pa. 460, 476, 533 A.2d 74, 81 (1987) (emphasis added). The majority maintains that it is irrelevant whether a defendant elects the right to remain silent at the outset or reasserts it at a later time. I agree. However, to suggest that we will also safeguard statements made after the defendant has renounced this right is beyond the protections guaranteed by the Fifth Amendment. Therefore, once Appellant chose to

comment on the events surrounding the incident to whatever extent he so chose, he elected to have those statements used against him, including any reasonable inference drawn therefrom.

Appellant also contends that the prosecutor committed error when the prosecutor referred to Appellant's post-arrest silence during closing arguments. During summation, the prosecution argued that it would be reasonable to conclude that a person under similar circumstances would immediately declare that the incident was an accident. In *Commonwealth v. Lawson,* 519 Pa. 175, 190, 546 A.2d 589, 596 (1988), we stated, "that prosecutors are permitted to argue on closing any reasonable inferences arising from the evidence." The Commonwealth's argument is a reasonable inference drawn from the fact that Appellant had waived his right to remain silent and made various statements concerning the incident (none of which stated that incident was an accident), before reasserting this right.

Accordingly, for the reasons set forth above, I would affirm Appellant's judgment of sentence.