COMMONWEALTH of Pennsylvania, Appellee,

v.

Kenneth JOHNSON a/k/a Kenneth Johnston, Appellant.

Superior Court of Pennsylvania.

Argued April 5, 2001.

Filed Nov. 20, 2001.

Kirk J. Henderson, Public Defender, Pittsburgh, for appellant.

Sally K. Kaye, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before DEL SOLE, President Judge, EAKIN and BROSKY, JJ.

BROSKY, Judge:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted of possession of cocaine offenses. Appellant asserts that the prosecutor made an impermissible reference to post-arrest silence when questioning his lone witness and that trial counsel was ineffective for failing to move for a mistrial afterward. We agree with Appellant's assertions and, consequently, vacate the judgment of sentence and remand for a new trial.

¶ 2 On February 10, 1999, Pittsburgh Police Officers Talib Ghafoor, Terry Holland and others were working a drug suppression detail in the Homewood/Brushton area of Pittsburgh. As part of his duties, Officer Ghafoor was dressed in "plain clothes" and walking the street. As Ghafoor approached the intersection of Brushton Avenue and Mulford Street, a man, later identified by Officer Ghafoor as Appellant, approached Officer Ghafoor and inquired if Officer Ghafoor "got high." Ghafoor responded "yeah, I get high." The man then asked Ghafoor how much money he had. Officer Ghafoor responded, "$5." The man persuaded Officer Ghafoor to give him the five dollars and then led Officer Ghafoor to the Honey Dew Bar, a local bar which, according to local reputation, is a place where one can purchase illicit drugs.

¶ 3 Inside the Honey Dew, Ghafoor's new companion approached another unidentified man toward the end of the bar near the bathroom. The two men completed an exchange, cash for an object Officer Ghafoor could not identify, whereupon Ghafoor and the first man left the bar. After leaving the Honey Dew, the two men proceeded to the 600 block of Hale Street at which time the man produced a baggie with a piece of crack cocaine in it. The man broke the piece in two and handed Officer Ghafoor one of the pieces. The man then proceeded to the back of an abandoned house, ostensibly to smoke the "crack." Officer Ghafoor then radioed the other members of the detail to close in and make an arrest. However, when the officers closed in on the location where the man was believed to have gone, nobody was there. Additional units were called and the officers searched the neighborhood for approximately 45 minutes in an attempt to find the man who had purchased the crack cocaine. Just as the officers were ready to abandon the search Officer Ghafoor spotted Appellant walking down the street. Believing that Appellant was the same man that had purchased the crack cocaine in the Honey Dew Bar and shared it with him, Officer Ghafoor arrested Appellant and took him into custody. Appellant was later charged with two counts of possession of cocaine.

¶ 4 Appellant proceeded to trial on December 8, 1999 and was convicted by a jury the following day. Appellant was sentenced on February 4, 2000 and filed a timely appeal to this Court on March 6, 2000. After the appeal was filed, Appellant's privately retained counsel was replaced by the Public Defender's Office. Appellant's new counsel filed a brief alleging, in part, trial counsel's ineffectiveness. Thus, the present case is ripe for our disposition.

¶ 5 A possibly unique aspect of our legal heritage is that the sovereign is assigned the unmitigated obligation to prove an accused guilty of a charged crime beyond a reasonable doubt and that an individual who is accused of committing a crime is not obligated to refute the charges against him in any way, shape or form. From this general premise springs the more commonly known right to remain silent, which is secured to the American people in the Fifth Amendment to the

United States Constitution, and to citizens of this Commonwealth in Article One, Section Nine of the Pennsylvania Constitution. This right to remain silent applies to every stage of the criminal justice proceedings, from custodial interrogation through trial. Nevertheless, particularly among laypersons, the belief that an innocent man would naturally proclaim his innocence, or dispel an accusation if it were untrue, or offer up an alibi if one were available, is a particularly strong premise that stands as completely antithetical to the above guaranteed right. The two propositions are thus contradictory and cannot realistically coexist. This circumstance, in effect, has required our law to decide between the merits of each proposition. In the case of our jurisprudence, the balance has been struck in favor of the accused and it is deemed impermissible for the prosecutor to highlight or comment upon the fact that a criminal defendant remained silent in the face of accusations against him.

■ ¶ 6 Although, generally speaking, it is well understood that a prosecutor may not comment upon a defendant's exercise of his right to remain silent, the full scope of the protection at issue is not as easily comprehended. The circumstance that sets up a claim that the prosecutor impermissibly commented upon the accused's right to remain silent is not merely a commentary that the defendant remained silent, "took the fifth" or failed to make a statement when questioned. Rather, the same protection is implicated when there is commentary or a question that highlights that a defense or explanation offered at trial could have been proffered earlier, but was not. As stated in *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91, (1976), "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."

¶ 7 As one would expect, similar holdings can be found·in Pennsylvania cases. In fact, the Supreme Court has been remarkably consistent in this view for three decades. The first occurring of three relevant decisions spaced roughly a decade apart was *Commonwealth v. Dulaney*, 449 Pa. 45, 295 A.2d 328 (1972). There, upon investigating a stabbing homicide, Dulaney remarked to police "I stabbed him. .... That's all I have to say." However, at trial, the defendant claimed the stabbing was in self-defense. During cross-examination the prosecutor asked the defendant why he neglected to inform the police that the stabbing was in self-defense. Additionally, the prosecutor argued, in closing, that if the stabbing was in self-defense a person would not simply state "I stabbed him," but, rather, a person would explain that the stabbing was in self-defense. Upon appeal, our Supreme Court, setting the stage for its later decisions in *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982) and *Commonwealth v. DiPietro*, 538 Pa. 382, 648 A.2d 777 (1994), found the questioning and commentary an impermissible reference to the accused's right to remain silent.

¶ 8 Likewise, in *Turner*, Mr. Turner was on trial for homicide in the shooting death of Richard Hilton. On cross-examination, after testifying that the shooting was in self-defense, Turner was asked: "Did you ever tell the police that somebody was shooting at you?" The Supreme Court, like it did in *Dulaney* and would later in *DiPietro*, concluded that this question was an impermissible reference to Turner's post-arrest silence.

¶ 9 Finally, in *DiPietro*, the defendant was prosecuted for aggravated assault based upon the accusation that he intentionally ran down a pedestrian with his

motor vehicle. Shortly after the incident, DiPietro had given a limited statement to police regarding the collision but did not claim that the collision was accidental. In contrast, at trial, the defendant asserted that the collision was purely accidental. At trial, although there was no specific reference or commentary to Appellant's asserting his fifth amendment right to remain silent, the prosecutor did ask the investigating Trooper if the defendant had told the Trooper, during the initial questioning, that the incident was an accident. Additionally, during closing argument the prosecutor pointed out that the defendant had not claimed that the incident was accidental until the time of trial. Upon appeal our Supreme Court concluded that the prosecutor's references to the fact that the defendant did not claim the incident was accidental until the time of trial was impermissible commentary that infringed upon Appellant's fifth amendment right to remain silent.

¶ 10 Commentary contained in *Dulaney* is both telling and instructive. There the Court stated:

> To refuse to present his defense to the police was not only a constitutional right of the accused, but indeed probably an advisable course to take. For the Commonwealth to use this fair assertion of a constitutional right as an admission of guilt was to fly in the face of the Fifth Amendment and the judicial decisions in execution thereof.

*Dulaney, supra,* 295 A.2d at 331.

■ ¶ 11 Turning to the present case, it is clear that the prosecutor impermissibly commented or referred to Appellant's post-arrest silence in a manner similar to that seen in *Dulaney, Turner* and *DiPietro.* Appellant's defense was essentially one of mistaken identity/alibi. Appellant did not testify in his defense but did produce a single witness, Charlene Malloy, to establish a defense. Ms. Malloy indicated that Appellant was her fiancée. Ms. Malloy testified that on the night Appellant was arrested Appellant was at home with her until he went out for a pack of cigarettes, at which point he did not return due to his arrest. This implied that Appellant could not have been the man who had purchased the cocaine with Officer Ghafoor, as he had been inside with Ms. Malloy until immediately before he was arrested. It further implied that Officer Ghafoor was mistaken when he observed Appellant and determined that Appellant was the one that had purchased the cocaine.

¶ 12 During the cross-examination of Ms. Malloy, the following exchange took place:

> "Prosecutor: And you could have verified that he just went out for cigarettes and beer, couldn't you?"
>
> Ms. Malloy: Yes, I could.
>
> Prosecutor: So he could have just told the police, "Hey, you can go see my fiancée right up here on Kelly Street?"

N.T. Trial, 12/8/98 at 87. After an objection was lodged and denied, the prosecutor continued:

> Prosecutor: He could have told the police, "Come up here on Kelly Street-."

*Id.* At that point, defense counsel asked the court for a sidebar conference wherein another objection was lodged and ultimately sustained. The above exchange represents the basis for the present appeal.

¶ 13 By questioning the witness in the above manner the prosecutor was able to highlight the fact that the Appellant did not take advantage of an opportunity to exculpate himself that would have been available if his defense were true. The suggestion implicit in the prosecutor's questioning should have been clear to the jury, had Appellant, in fact, been with his fiancée, as she testified, he would have

stated so to the officers when he was apprehended by the police. The fact that he did not indicates that the proffered defense is a pure fabrication. Of course, this innuendo flies in the face of the right to remain silent and is contrary to the holdings found in the *Dulaney, Turner* and *DiPietro* decisions. Assuming for purposes of this discussion that Appellant was indeed with his fiancée, as she testified, instead of securing ten dollar's worth of crack cocaine for himself and Officer Ghafoor, he was under no obligation to volunteer that information to the police at the time of his arrest. The prosecutor's questioning to this effect is regarded by the above cited cases as infringing upon this right and is impermissible.

■ ¶ 14 The Commonwealth seeks to justify the questioning at issue by indicating that it was permissible impeachment of Ms. Malloy's testimony that Appellant lived with her. According to the Commonwealth, Appellant asserted that he was homeless when he was arrested. As such, this statement of the Appellant conflicts with the assertion made by Ms. Malloy. Although, as will be shown *infra*, the Commonwealth's argument is flawed, it might be negated at the outset by the simple fact that it is unclear that Appellant made any such statement upon arrest.

¶ 15 The Commonwealth contends that Appellant stated he was homeless when he was arrested. Nevertheless, the testimony in this regard was quite equivocal and the Commonwealth did not establish, with any clarity, that Appellant made such a statement when arrested. On cross-examination Officer Ghafoor was questioned about his notation on the police report that Appellant was homeless. Officer Ghafoor indicated that he got that information from Appellant. The following exchange then took place: Counsel: "He's the one that told you that?" Ghafoor: "Yeah. He said

he didn't have an address, he wasn't giving an address." Counsel: "Homeless means he wasn't giving an address, is that right?" Ghafoor: "That's correct." Although Officer Ghafoor's first comment was that Appellant stated "he didn't have an address," Officer Ghafoor immediately qualified this comment by stating that Appellant would not give an address. When asked again, for purposes of clarifying the somewhat ambiguous response, Officer Ghafoor reiterated that the notation "homeless" was because Appellant "wasn't giving an address." Considering the testimony on this matter, it does not appear that Appellant stated he was homeless and, certainly, the Commonwealth did not establish that Appellant made this statement with any reasonable degree of clarity.

¶ 16 If Appellant never stated that he was homeless but, rather, was noted as homeless due to a refusal to give an address, in other words, due to post-arrest silence, then there was no statement to impeach Ms. Malloy with and the Commonwealth's argument is flawed to begin with. Nevertheless, assuming that Appellant, in fact, indicated that he was homeless, it does not necessarily follow that the Commonwealth was thereby privileged to highlight Appellant's failure to give the potentially exculpatory statement at the time of arrest to impeach Appellant's statement, let alone the testimony of a totally different witness, Ms. Malloy. Indeed, caselaw suggests that this form of "impeachment" is impermissible.

■ ¶ 17 In *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537, 539–40 (1982), our Supreme Court stated:

The prejudice to the defendant resulting from reference to his silence is substantial. While it is efficacious for the Commonwealth to attempt to uncover a fabricated version of events, in light of the "insolubly ambiguous" nature of silence

on the part of the accused, *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97 (1976), we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant allowance of any reference at trial to the silence. Accordingly, the Commonwealth must seek to impeach a defendant's relation of events by reference only to inconsistencies as they factually exist, not to the purported inconsistency between silence at arrest and testimony at trial. Silence at the time of arrest may become a factual inconsistency in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest when in fact he remained silent. *Doyle v. Ohio*, *Id.* at 619, n. 11, 96 S.Ct. at 2245, n. 11, 49 L.Ed.2d at 98, n. 11. Absent such an assertion, the reference by the prosecutor to previous silence is impermissible and reversible error.

(Quoted with approval in *Commonwealth v. Costa*, 560 Pa. 95, 742 A.2d 1076 (1999)). The above passage suggests that a factual inconsistency may be pointed out, but that it is impermissible to highlight an arrestee's silence on a matter for purposes of impeachment. In other words, had Appellant taken the stand and testified that he had made an exculpatory statement to police, the prosecution would have been able to rebut that assertion with testimony to the effect that he had made no post-arrest statement. Or conversely, if Appellant had taken the stand and, for some reason, asserted that he did not make a statement when in fact he did, the Commonwealth would have been able to rebut that assertion. However, the caselaw makes clear that the Commonwealth is not permitted to point out a defendant's post-arrest failure to exculpate himself to impeach the defense offered at trial. If this is so when the defendant takes the stand, it must be even more unequivocally so with respect to the testimony of another defense witness.

¶ 18 Additionally, the Commonwealth's protest seemingly suggests that they were unfairly prevented from rebutting or impeaching Appellant's witness. This is untrue. Prior to the questioning at the heart of this appeal the following exchange took place regarding the address discrepancy. Prosecutor: "How come he would tell somebody that he was homeless, didn't have an address?" Ms. Malloy: "I don't think he would tell anybody he was homeless." Prosecutor: "So if Officer Ghafoor and Detective Holland would say that 'he told me he was homeless, didn't have an address,' they would be lying, then?" Ms. Malloy: "I suspect, because he's been living with me."

■ ¶ 19 The above exchange immediately preceded the questioning at the heart of this case and was sufficient to contradict Ms. Malloy's statement that Appellant was living with her, assuming that Appellant even made that statement when arrested. In other words, the above exchange provided the necessary impeachment the Commonwealth claims entitlement to, it was not necessary, for purposes of impeachment of Ms. Malloy, to highlight the fact that Appellant did not offer the exculpatory explanation subsequently offered at trial. If it were the Commonwealth's intent to show that Ms. Malloy was fabricating the assertion that Appellant lived with her to assist Appellant, the above exchange would have had that tendency. Additionally, the Commonwealth was free to produce other evidence to rebut Ms. Malloy's assertion if it were untrue, for instance, the testimony of neighbors that Appellant did not live there, or evidence that Appellant resided elsewhere. However, there is no reason to suggest that a reference that is otherwise deemed highly prejudicial and inadmissible is admissible

for purposes of impeaching a defense witness.

■ ¶ 20 In reality, the Commonwealth merely sought to introduce an impermissible suggestion through a perceived backdoor. Undoubtedly, such cross-examination would have aided the Commonwealth's impeachment of Ms. Malloy and their case in general. However, this fact alone does not make the cross-examination permissible. While certainly the Commonwealth would prefer that there be no impediments to the introduction of evidence for purposes of impeachment, allowing the admission of otherwise inadmissible evidence for the purposes of impeachment would allow the exception to swallow the rule. What would be next, the introduction of inadmissible hearsay or properly suppressed evidence simply to assist the impugning of a defendant's case? Clearly, if questioning that is deemed an impermissible inference on Appellant's post-arrest silence cannot be utilized to impeach the Appellant's own testimony, it cannot be used to impeach the testimony of a defense witness either.

■ ¶ 21 Despite the fact that the court sustained counsel's objection to the disputed cross-examination as impermissibly highlighting Appellant's post-arrest silence, Appellant's counsel did not request a mistrial. Thus, Appellant now asserts ineffective assistance of counsel due to that failure. Our above analysis establishes that the underlying claim had merit. The question then is whether there was sufficient prejudice to require a new trial. Following the lead of our Supreme Court in *Commonwealth v. Costa*, 560 Pa. 95, 742

A.2d 1076 (1999), we believe the answer is yes.

¶ 22 In *Costa* our Supreme Court considered the impropriety and the prejudice resulting from a rather innocuous exchange that referenced a failure to exculpate. There the prosecutor asked a police officer "Did the defendant say anything to you when these charges were filed?," to which the police officer responded "No." Not only did our Supreme Court conclude that this exchange constituted an impermissible reference to the appellant's post-arrest silence, the Court further concluded that counsel's failure to object to the exchange constituted ineffectiveness of counsel that required the granting of a new trial.[1] Necessary to the Court's conclusion was the finding that even this rather innocent seeming exchange created substantial prejudice to the defendant.

¶ 23 If the exchange that occurred in *Costa* was deemed prejudicial enough to require a new trial, we find it difficult to reach an opposite conclusion here. Based upon the precedent supplied by *DiPietro*, *Turner* and *Dulaney*, the prosecutor's questioning was impermissible and must be deemed to have significantly prejudiced Appellant's defense, which rested upon the testimony of his only witness. In dutiful compliance with the *Costa* decision, we feel obligated to extend to Appellant the same remedy our Supreme Court extended Costa.[2]

¶ 24 Judgment of sentence vacated. Remanded for new trial. Jurisdiction relinquished.

¶ 25 EAKIN, J., files a Dissenting Opinion.

---

1. The Court further concluded that counsel's failure to object to this impermissible reference was without a reasonable basis.

2. Our decision renders moot Appellant's assertion that the trial court should have granted a mistrial *sua sponte* and the Commonwealth's countervailing argument that this argument is waived for failure to include it in Appellant's Rule 1925 statement.

EAKIN, Judge, Dissenting.

¶ 1 I must dissent from the appealing analysis of my colleagues. While the cases cited are compelling at first blush, the situation here was different and in my judgment warrants a different result.

¶ 2 The prosecution did not bring out information about appellant's refusal to supply an address. This came to light on cross-examination of the officer by appellant's counsel,[3] as testimony of appellant telling an officer he would not provide an address during booking. It did not come in as a reference to appellant's silence. It was brought up by the defense before the witness Malloy took the stand. Once in evidence, it is no longer "post-arrest silence" that everyone must pretend did not occur.

¶ 3 That is, the *defense* evidence established that appellant affirmatively refused to provide an address. After establishing that refusal, the defense put on a witness who said he really did have an address, very close by. Can the prosecution challenge that witness' credibility with the prior evidence brought out by the defense, that appellant said he had no address, much less this address? I think so, and find no error, much less one of constitutional magnitude, in the limited reference made here.[4]

¶ 4 I find the scenario here different than the cases cited, because the defense brought in the affirmative refusal to provide routine information, which is not silence. Because its very limited exposure to the jury was in the legitimate attempt to challenge the credibility of the alibi witness, I see no error in the questioning.

¶ 5 Accordingly, I respectfully dissent.

---

**3.** The officer testified "he said he didn't have" or "wasn't giving" an address. In the light most favorable to the verdict winner, I must conclude appellant told police he would provide no address; in such a light, the conclusion he said nothing is at best interpretive and speculative.

**4.** The majority implies this "back door" tactic is the next thing to allowing suppressed evidence to impugn the defense. Suppressed evidence can be used in certain circumstances, as where the defense itself brings it up, denies its existence, or testifies contrary to a suppressed confession. The same reasoning applies here: once the defense introduces something, excludable or not, it can no longer complain of its further explanation and use. If a back door, it is a door opened by appellant.